*c)*

WESTON *v.* THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY *et als.*

A party who purchases at sheriff's sale stock of an incorporation, knowing that the certificates of such stock have been previously hypothecated, is chargeable with notice of the fact, and takes subject to the claim of the pledgee.

Neither the Incorporation Act of 1850, nor that of 1853, was intended to cover such a case, but to apply only to transfers and purchases in good faith without notice.

The Act of 1853 does not substantially alter that of 1850 in this respect, and its construction having been heretofore judicially established, public policy demands that it should be maintained.

APPEAL from the District Court of the Sixth Judicial District.

The plaintiff filed his bill against the Bear River and Auburn Water and Mining Company, and S. W. Lovell, C. H. Swift, Michael Reese, and C. E. Buckingham, alleging that on February 4th, 1854, the plaintiff purchased at sheriff's sale, under certain executions against Lovell, certain stock of Lovell in the said company; that at the time of said date, the stock stood in the name of Lovell on the books of the company; that shortly after the sale, plaintiff applied to the officers of the company to have the stock transferred to him on the books, which was refused; that the defendant Swift had possession of some of the certificates of stock of Lovell, and refused to surrender them; that Reese and Buckingham have other certificates of the stock which they also refuse to surrender.

The bill prays for a decree commanding the corporation to transfer the stock to plaintiff on their books, and compelling the surrender of the certificates by the other defendants to be cancelled, and for an injunction restraining further transfer of the certificates.

The defence set up in the several answers filed by defendants, is that some of the certificates had been pledged to Swift, and others had been sold to Reese and Buckingham before any lien attached thereon in any of the suits, in which the executions issued, under which plaintiff bought; that plaintiff knew of such pledge and sale of said certificates when he purchased at the sheriff's sale; that the certificates held by Reese and others by purchase, had been surrendered and new certificates issued to the purchasers.

The finding of the Court, which forms the only statement of the case, establishes the facts as above alleged by both parties; that Swift's certificates were held by him as pledgee, having been pledged to him on the 23d of April, 1852, as surety for three notes, without transfer on the books; that Reese and Buckingham had bought their certificates at auction on the 10th of February, 1853, and that they had surrendered them and received new certificates in lieu thereof; that all said transfers were made before the attachment of any lien in the actions in which the executions issued under which plaintiff bought; and that plaintiff had full notice of said hypothecation and sale of said stock at the time he purchased; and that the said company is a corporation organized under the Act of 1850, and that its corporate existence was continued under the "Act to provide for the formation of certain corporations," approved April 14, 1853.

On this finding the Court below entered a decree as prayed for in plaintiff's bill. Defendants moved for a new trial, which was denied, and defendants appealed.

*Edwards & English* for Appellants.

This is not a suit to settle the question of the legal title to the stock—for it is a suit instituted on the equity side of the Court—but it is to settle who is entitled to this stock in equity.

Now, it is an established principle in equity that when a person has acquired the legal title to property, with a knowledge of the equitable rights of others, he holds that property subject to those equitable rights, and may even be compelled to convey the legal title to those who hold the equity.

It is, therefore, necessary to ascertain whether the same distinction between the legal title and equitable rights to stock in incorporated companies exists as in the case of real property.

Many cases might be cited to show that this distinction is recognized by the Courts, but we deem it unnecessary to call the attention of this Court to but a single case, in which the subject is fully considered and the various cases touching the point thoroughly reviewed by a master mind—Judge Story. The case is the United Sates *v.* Cutts, 1 Summer, 138.

This point being established, we say that a transfer of stock, without the entry of the transfer on the books of the Company, passes the title as between vendor and vendee; and any person purchasing under an attachment or execution against the vendor, subsequently levied on the stock, with notice of the rights of the vendee, takes it subject to his rights. Bank of Utica v. Smalley, 2 Cowen, 777; Quinn v. Marblehead Soc. Insurance Company, 10 Mass., 480; Sergeant v. Essex Mar. Rail Corporation, 9 Pick., 204; Plymouth Bank v. Bank of Norfolk, 10 ibid, 457; Black et al. v. Zacharie et al., 3 How. S. C. R., 513; United States v. Vaughan, 3 Binn., 400.

The plaintiff having purchased the stock in question at sheriff's sale, with a full notice of the rights of the defendants Reese, Buckingham and Swift, these defendants are entitled to the stock in equity.

But the plaintiff objects, that because the transfer to Reese, Buckingham and Swift were not made on the books of the company, they are absolutely void, and relies upon the ninth section of the "Act to provide for the formation of corporations for certain purposes," approved April 14, 1853.

Act of 1853, p. 88, § 9. The plaintiff contends that this section makes all transfers absolutely void unless entered on the books of the corporation.

To support this position, the plaintiff cites the opinion of this Court in this case when it was here before—but the case now stands on different grounds from what it then did. Then, owing to an error in the date of a certain certificate, as shown by the transcript, the company was held to be subject only to the Act of 1850, as can be seen by reference to the decision itself.

But in the Act of 1853, under which the case is now to be decided, there is no such section as the 144th section of the Act of 1850. The plaintiff has nothing to rely upon but the 9th section of the Act of 1853, above cited.

Does this 9th section of the Act of 1853, make all transfers absolutely void, unless entered on the books of the Company? We say it does not.

1. Because this section, and all similar provisions, in acts of incorporation, are designed mainly for the protection of the corporation itself, and if for the protection of any purchasers, it is only for the protection of purchasers without notice. Bank of Utica v. Smalley, 2 Cowen, 777; Black et al. v. Zacharie et al., 3 Howard, S. C. R., 513; Commercial Bank of Buffalo v. Kartwright, 22 Wend., 362; Quinn v. Marblehead Soc. Ins. Co., 10 Mass., 482–3.

2. The argument of plaintiff, by which he contends that the 9th section makes all transfers absolutely void, unless entered on the books of the Company, amounts to this:

That if the defendants kept the stock in their possession, without giving the notice which the law requires, to wit, by entering these transfers on the books of the Company, they were enabling Lovell to cheat and defraud innocent parties by permitting him to hold out the

stock to the world as his property and obtain credit on the same, and that they cannot now take advantage of their own wrong; and if they have neglected to register their title to the stock, it is their own fault, and they must suffer rather than an innocent party.

To this we reply, that the argument is entirely based upon the position that the record of the transfer of stock kept by an incorporated company is a public record, imparting notice like the authorized records in the office of county recorder; but this position is altogether without foundation, there being nothing in the law, common or statute, making it a public record.

But even if it was a public record, the plaintiff claims for it greater virtue than is possessed by the authorized records of the county recorder's office. Those records impart notice, but every instrument omitted to be recorded is not absolutely void, and every purchaser with actual notice is as much affected as though the title paper had been recorded.

3. The Act itself negatives the position of plaintiff. He contends that the 9th section makes all transfers absolutely void unless entered on the books of the Company; but the 12th section expressly provides that—

"Any stockholder may pledge his stock by a delivery of the certificates or other evidence of his interest, but may nevertheless represent the same at all meetings, and vote accordingly as a stockholder."

Act of 1853, p. 89, § 12 and § 17, provides—

" No person holding stock as executor, administrator, guardian, or trustee, or holding it as collateral security, or in pledge, shall be personally subject to any liability as a stockholder of the company; but the person pledging the stock shall be considered as holding the same, and shall be liable as a stockholder accordingly."

Act of 1853, p. 90, § 17. These provisions are inconsistent with the position taken by the plaintiff. The 12th section says the stock may be pledged by a delivery of the certificates.

But the plaintiff may contend here as in the Court below, that because the stock in dispute in this cause was transferred before the Act of 1853 took effect, therefore the rights of the parties in this suit are to be determined by the Act of 1850.

To this we reply, that the plaintiff had no rights in the premises on the 30th day of April, 1853. He did not acquire his rights—if he has any—until 1854. He had no rights while the company was subject to the Act of 1850, and he cannot ask that his rights should be determined by the provisions of that Act.

*Long & Judah* for Respondent.

The respondent contends that the decision of this Court, at the April term, 1855, decides this cause, notwithstanding the additional facts found by the Court below.

The only difference between the provisions of the Act of 1850 and the Act of 1853, is to be found in the omission, in the Act of 1853, of

the words contained in the one hundred and forty-fourth section of the Act of 1850, as follows : *"For any purpose whatever."*

The Act of 1850 says : *"And no transfer of stock shall be valid, for any purpose whatever."*

The Act of 1853 says : "But no transfer shall be valid, except between the parties thereto, until the same shall have been so entered on the books of the company, so as to show the names of the parties by and to whom transferred, the number and designation of the shares, and the date of the transfer."

The eighteenth section of the Act of 1853, corresponds to the one hundred and forty-fourth section of the Act of 1850, to which this Court in their former opinion refer, and say its provisions are amply sufficient for the protection of the company.

The only question then, presented to the Court, is whether the omission in the Act of 1853, of the words, *"for any purpose whatever,"* has so changed the meaning of the statute, as expounded by this Court, as to authorize the transfer of the stock, when under the former Act it could not be done.

We say it has not; that the words, *"for any purpose whatever,"* following the words, *"and no tranfser of stock shall be valid,"* were merely surplusage or explanatory; that the words, "no transfer of stock shall be valid," necessarily include the words, "for any purpose whatever." Any other construction of the Act would be in violation of the express and forcible language of the statute, and of the principle which is involved and announced in the former opinion delivered in this case.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT concurred.

A party who purchases at sheriff's sale, stocks of an incorporation, knowing that the certificates of such stock have been previously hypothecated, is chargeable with notice of such fact, and takes subject to the claim of the pledgee. Neither the incorporation law of 1850, or of 1853, was intended to cover a case of this kind, but apply only to transfers and purchases in good faith without notice.

In the case of Weston *v.* The Bear River Water and Mining Company, decided at the April term, 1855, this point was not presented to the consideration of the Court, and the case went off on a construction of the statute only.

In the present case, the fact is found by the Court below, and upon that finding it results that the plaintiff, who knew of the hypothecation of the certificates, is not a purchaser in good faith, and therefore not entitled to relief in a Court of equity.

The statute of 1853 does not substantially alter the law of 1850, and as the construction established in the former decision, is now generally understood, and acted upon, public policy demands that it should be maintained.

Judgment reversed.