BATESVILLE TELEPHONE COMPANY *v.* MYER-SCHMIDT GROCER COMPANY.

Opinion delivered April 21, 1900.

08 115
73 90
73 95
175 496
68 115
88 113

CORPORATION—PLEDGE OF STOCK—RECORD.—Sand. & H. Dig., §§ 1337, 1338, providing that whenever a stockholder in a corporation shall transfer his stock in a corporation a certificate of such transfer shall be deposited with the county clerk, who shall note the time of said deposit and record it, and that no transfer shall be valid as against any creditor of such stockholder until such certificate shall have been deposited, do not apply to transfers by way of pledge, but only to absolute sales. (Page 119.)

Appeal from Independence Circuit Court.

RICHARD H. POWELL, Judge.

*J. C. Yancey, J. W. Butler, Rose, Hemingway & Rose,* and *J. M. Moore,* for appellants.

The statute (Sand. & H. Dig., § 1338) requiring that all transfers of corporate stock be recorded does not apply to a pledge of stock. 45. Pac. 320; 93 Fed. 603; 1 Sumn. 133; 34 Atl. 1127; 34 S. W. 209; 18 *id.* 549; 87 Fed. 58; 4 Mass. 511; 3 Binn. 394; 2 Cow. 526. In New York it is held that the registration laws have no effect as to equitable claims. 49 N. Y. 222; 14 *id.* 560; 22 Wend. 362; 34 N. Y. 80. See also, 3 How. 512. The stock, being under pledge, was not subject to sale under execution. 42 Ark. 236; 58 *id.* 291; 64 *id.* 215. Actual notice of the transfer was equivalent to registration. Even in cases of the grossest fraud, fraud and injury must concur, to give a right of action. 12 Pet. 178; 43 Ark. 462; 11 *id.* 370. That actual notice should be tantamount to the registration prescribed by the statute, see: 16 Ark. 543; 3 Atk. 646; S. C. 2 Lead. Cas. Eq. 35; 26 Ark. 523; 30 *id.* 114; 47 Ark. 540; 58 Ark. 252; 42 *id.* 450; 53 *id.* 139; 34 *id.* 92; 33 *id.* 336; 28 *id.* 85; 93 Fed. 607; 11 Wall. 369; 15 Fed. 501; 30 Conn. 270. The doctrine regarding the registration of mortgages laid down in *Main* v. *Alexander* (9 Ark. 112) does not invalidate this position. That case has been restricted to the narrowest possible limits. *Cf.* 61 Ark. 125; 60 *id.* 595; 43 *id.* 464; 37 *id.* 511; 37 Ark. 632; 49 *id.* 270; 52 *id.* 385; 42 *id.* 66. Also that case has been much doubted. 39 Ark. 386; 42 *id.* 148; 41 *id.* 92. The literal construction of the statute, contended for by appellee, can not be maintained. Broom, Leg. Max. 536; 4 H. L. 97. "Any creditor," as used in the statute, should be given a usual and fair construction. 51. S. W. 633; Endl. Stat. §§ 44, 67, 118, 225, 167, 405, 278, 258, 338e, 114, 291, 296, 125, 142, 381, 299, 166, 65, 216, 225b, 115, 228, 249, 62, 173, 385r, 151, 345, 248, 227, 340, 121, 334, 251, 170c, 335, 340, 174. An unregistered transfer of stock is good as against an attaching creditor with notice. 7 Fed.

369; 15 *id.* 494; 1 Sumn. 153; 3 How. 483; 118 U. S. 9; 116
U. S. 8.    Further on the general proposition that actual no-
tice dispenses with necessity of registration, see:—Lowell,
Transf. of Stock, §§ 91, 96, 105; 2 Freeman Ex. § 348; 1 Mor.
Corp. § 196; Cook, Stock, etc. § 489; 2 Thomps. Corp. § 2410; 26
Fed. 94; 2 E. & B. 624; 29 Pa. St. 398; 137 *id.* 138; 50 N. H.
571; 52 Vt. 73; 52 N. W. 268; 35 *id.* 578; 86 Ky. 408; 78
S. W. 295; 6 Mo. App. 454; S. C. 74 Mo. 77; 61 Tex. 114;
12 So. 6; 3 Daly, 219; 48 N. Y. 585; 132 N. Y. 251; S. C.
30 N. E. 644; 46 N. Y. 332; 34 N. Y. 79, 85; 4 Halst. Ch.
167; 29 Pa. St. 146; 63 Fed. 900; 1 Oh. St. 305; 21 Fla. 1;
35 Cal. 655; 58 *id.* 603; 64 *id.* 388; 40 *id.* 614; 26 Minn.
55; 45 Pac. 329; 87 Fed. 58; 26 Atl. 882; 13 N. J. Eq. 24;
49 N. Y. 222; 14 *id.* 560; 22 Wend. 362; 34 N. Y. 80; 2
Wheat. 393; 137 Pa. St. 147, 148; 3 Binn. 401; 6 Whart.
116; 146 Pa. St. 356; 44 *id.* 5; 29 Mo. App. 492; 10 Mo.
388; 52 N. Y. 203; 17 N. J. Eq. 119; 76 N. Y. 371; 31 La.
Ann. 149; 30 *id.* 714; 33 *id.* 1286; 11 S. Car. 520; Jones,
Stockholders, § 160; Cook, Stock, etc. § 465; 111 U. S. 479; 103
Mass. 306; 34 Atl. 1127; 34 S. W. 209; 18 *id.* 549; 50
Conn. 472; 47 Am. Rep. 663; 3 Paige, 350; 40 Cal. 614; 35
*id.* 653; 10 Bush, 54; 33 N. W. 897; 32 Am. St. Rep. 624;
3 Binn. 394; S. C. 5 Am. Dec. 375; 6 Wash. 597; S. C. 61
N. W. 839.

*H. L. Coleman* and *Robert Neill*, for appellees.

It was necessary that the transfer be recorded.    Sand. &
H. Dig., § 1338; 13 Am. & Eng. Enc. Law, 655.    Such a
construction will be placed upon a statute as will not suffer it
to be eluded.    3 Ark. 285.    *Byers* v. *Engles*, 16 Ark. 543,
relied upon by appellants, is applicable to *real estate conveyan-
ces*; while *Main* v. *Alexander*, 9 Ark. 112 applies to *mortgage*
registration.    The rule in the latter case—that actual notice
does not dispense with the necessity for registration—applies
to the case at bar.    This still is the rule in Arkansas.    20
Ark. 193; 37 Ark. 91, 94; 18 Ark. 85, 105; 42 Ark. 140;
32 Ark. 598; 22 Ark. 136; 33 Ark. 63, 68; 41 Ark. 186;
35 Ark. 62, 68; 40 Ark. 536; 35 Ark. 365; 49 Ark. 83; 49
Ark. 83; 61 Ark. 123; 54 Ark. 179.    As showing the rule

in other states see  108 Ill. 459, 461, construing statutes requiring record of conveyances, etc.   *Cf.* 51 Ill. 217, 219; 122 Ill. 657, 668; 53 Ill. 478; 83 Ill. 538; 50 Ill. 444; 128 Ill. 29—all recognizing the distinction as to mortgages.   Compare, also, 26 Ind. 124 and 38 Ind. 474, 476, with 125 Ind. 432, 439. See also, in Massachusetts, 13 Metc. 200, 202–3; *id.* 304; 1 Allen, 373–4; 137 Mass. 460—to the effect that notice is not tantamount to registration of mortgages. See, also, 48 Me. 458; 108 Mo. 451, 458; 31 Mo. 437; 63 Mo. App. 315; 89 Wis. 61, 64; 80 Wis. 339; 24 Wend. 115; 31 Barb. 590, 613, 619; 27 N. Y. 568, 581–2–3; 3 Cranch, 140; 40 Oh. St. 569; 7 *ib.* 199; 42 Oh. St. 360; 103 Ia. 437; 7 Colo. App. 129; 49 Me. 315; 5 Cal. 186; 7 N. M. 611; 7 Col. 129; 51 Wis. 519; 5 Cal. 186; 9 Cal. 78; 20 Cal. 529.

BATTLE, J.   Section 12 of an act entitled "An act to provide for the creation and regulation of incorporated companies," approved April 12, 1869, which is sections 1337 and 1338 in Sandels & Hill's Digest, is as follows:

"The president and secretary of every corporation organized under the provisions of this act shall annually make a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the first of January or July next preceding the time of making such certificate, in the following particulars, viz:   The amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; the amount of its debts; *the name and number of shares of each stockholder;* which certificate shall be deposited on or before the 15th day of February or of August with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose; and whenever *any stockholder shall transfer his stock* in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid, who shall note the time of said deposit and record it at full length in a book to be kept by him for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been deposited."

Does the transfer of stock mentioned in this section include pledges of stock, or those transactions by which liens upon the same are acquired? This is the only question necessary for us to decide in this case. Eliminating from the section all except what has reference to the question, it reads as follows: "The president and secretary of every corporation organized under the provisions of this act shall annually make a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the first day of January or July next preceding the time of making such certificate, in the following particulars, viz: * * * the name and number of shares of each stockholder; which certificate shall be deposited on or before the 15th day of February or of August with the county clerk of the county in which said corporation transacts its business; * * * and whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid, who shall note the time of said deposit and record it at full length in a book to be kept by him for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been deposited." It is evident that the object of the certificate of the president and secretary as to the name and number of shares of each stockholder and that of the transfer of the stock by the stockholder are the same; and that the latter is intended to carry into effect the intention of the former; and that the object of both is to make known the names of the stockholders and the number of shares owned by each of them. This being true, it is obvious that the transfer of stock referred to was the absolute transfer of the legal and equitable title to stock, and not pledges or liens. This section does not undertake to regulate the creation or protection of liens, and hence does not affect those transactions by which liens are created without the transfer of stock, or any indorsement and delivery of stock which do not transfer, and create only a lien.

Section 12 of the act of April 12, 1869, was construed, in part, by the circuit court of appeals of the Eighth circuit of the

United States, and the same question we have under consideration was decided in *Masury* v. *Arkansas National Bank*, 93 Fed. Rep. 603. Judge Thayer, speaking for the court, said: "Looking at the two sections (sections 1337 and 1338 in Sandels & Hill's Digest) in the form in which they were originally enacted, the inference is a reasonable one that the legislature had in mind transfers whereby a shareholder parted with his entire legal and equitable title to the stock transferred, when it declared, in the concluding clause of the section, that whenever a stockholder transferred his stock a certificate of such transfer should be deposited with the county clerk. While the act does not in terms prescribe by whom the certificate of transfer shall be filed, whether by the corporation or by the person receiving a transfer of stock, nor what the certificate shall contain, yet it is fair to presume that the lawmaker intended to say that a person purchasing stock should obtain a certificate from the proper corporate officer to the effect that he had acquired certain shares of stock from a certain person or persons, and cause the same to be deposited with the county clerk as one of his muniments of title. The object of the legislature in requiring the county clerk to receive and record semi-annual reports from the officers of corporations, showing their financial condition and who were the shareholders, and to register transfers of stock made in the meantime in a book kept for that purpose, would seem to have been to provide a convenient record which might be consulted for the purpose of taxation, or for the purpose of ascertaining who had control of a corporation, and were responsible for its management, or who might be proceeded against as shareholders to enforce a stock liability in case a corporation became insolvent. All of these objects will be substantially subserved by holding that the section of the act now in question has reference to absolute sales of stock, and that it does not comprehend transfers which are effected by a simple indorsement and delivery of stock certificates as collateral security, inasmuch as creditors who thus hold stock in pledge which has not been transferred on the books of the corporation are not entitled to vote the stock or take part in the manage-

ment of the corporation, and ordinarily cannot be proceeded against as stockholders to enforce a stock liability. *National Bank of Commerce* v. *Allen*, 33 C. C. A. 169; *Vowell* v. *Thompson*, 3 Cranch, C. C. 438; *Brewster* v. *Hartley*, 37 Cal. 15; Cook, Stock & S. § 468, and cases there cited."

Our conclusion, as already indicated, is that the transfer of stock mentioned in section 12 of the act of April 12, 1869, does not include pledges or transactions by which liens only are acquired.

The judgment of the circuit court is reversed, and this action is dismissed.

BUNN, C. J., and HUGHES, J., dissent.

BUNN, C. J., (dissenting.)   It is argued in the opinion of the court that the object of the certificate mentioned in section 1337 and that mentioned in section 1338 of the digest have the same object.   The object of the first is not definitely stated in the section itself, but the inference undoubtedly is that the public may know, periodically, at least, what is the capital stock actually paid in, the cash value of the real estate of the corporation, the cash value of the personal estate, the cash value of the credits, and the amounts of the debts of the corporation.   The requirement that these things should be frequently shown, it is said, is an exercise of the state's police power over these institutions.   It is for the protection of the public generally, or rather for the purpose of enabling the state to so control the corporation that the public, as such, may not suffer detriment thereby.

The object of the certificate mentioned in section 1338 of the digest connected with its recording is plainly expressed in the section itself.   It protects the creditors of a stockholder from his secret transfers, and to accomplish this end it makes all transfers of stock void unless a certificate thereof is filed for record in the county clerk's office; that is, they are void as against the creditors of such stockholders.   The one is a certificate of the standing of the corporation itself as appears upon its books at stated periods, and the other is a certificate of such transfers of stock as may be made by the stockholders of their individual stock.   Therefore the two certificates have

not only different objects, but are evidences of different things entirely.

The fact that section 12 of the original act, entitled "An act to provide for the creation and regulation of incorporated companies," approved April 12, 1869, included both sections 1337 and 1338, as now appears in the digest, is relied on in argument to sustain the theory of the court as to similarity of the object of the two certificates and their recording. The rule in construction of statutes is that, in construing any clause, section, or part of an act of the legislature, consideration must be given to the whole of it, in order that the full meaning of the legislative mind on the subject should be ascertained, as far as possible. And this is necessary; for one clause, section or part of an act may explain one or more of the others in the act, or at least throw light upon them. Nothing, therefore, that the mere arrangement of the digester may effect, for the purposes of convenient reference, indexing, and so forth, can or does affect the real meaning of any clause, section, or part of an act. So far as meaning is concerned, there is no difference between a clause when coupled with another in the same section and when the two clauses are separated into different sections. There is no more nor less virtue in a clause because it begins with a lower-case letter, and is separated from the preceding one by a period, and is designated by a separate number, and called a section of itself; for, after all, its meaning is subject to all the influences the preceding clause or section may legitimately and reasonably exert upon it.

Again, if this argument be sound, it would have the same effect in a case of an absolute transfer of stock as in a case of a collateral transfer of the same. But it is manifest that the court does not mean to say that the rule it has laid down is applicable to an absolute sale and transfer of stock. Hence we think its argument, if carried to its logical sequence, simply would show more than the court desires to say.

The principal case cited and relied upon by the court in support of its opinion is the case of *Masury* v. *Ark. Nat. Bank*, 93 Fed. Rep. 603. It is undoubtedly true that that case

is strictly applicable to the case at bar, and, since it accords
with the opinion of the court in this case, we have nothing to
do but to controvert the doctrine of that case, as expressing the
true interpretation of our statutes on the subject, as embarrass-
ing as that may be.   The court in this case largely quotes sub-
stantially from the decision of *Masury* v. *Ark. Nat. Bank,*
and other portions, the following, to-wit:   "While the act
does not in terms prescribe by whom the certificate of trans-
fer shall be filed, whether by the corporation or by the
person receiving a transfer of stock, nor what the certificate
shall contain, yet it is fair to presume that the lawmaker in-
tended to say that a person purchasing stock should obtain a
certificate from the proper corporate officer to the effect that
he had acquired certain shares of stock from a certain person
or persons, and cause the same to be deposited with the county
clerk as one of his muniments of title."   Of course, the
proper thing for one acquiring from another certain shares of
stock is to obtain a certificate of the secretary or other proper
custodian of the corporation books, a certified copy of the fact
of the transfer of the stock, and then to deposit the same with
the county clerk, not as *one* of his muniments of title, but as
*the* muniment of his title, just as one who has procured a mort-
gage from another would be expected to carry it to the record-
er of the county, and cause it to be filed for record by the re-
corder.   There does not appear to be any mystery in this mat-
ter, as provided by statute.

The quotation continues:   "The object of the legislature
in requiring the county clerk to receive and record semi-annual
reports from the officers of corporations, showing their finan-
cial condition and who were the shareholders, and to register
transfers of stock made in the meantime in a book kept for
that purpose, would seem to have been to provide a convenient
record which might be consulted for the purpose of taxation,
or for the purpose of ascertaining who had control of a cor-
poration, and were responsible for its management, or who
might be proceeded against as shareholders to enforce a stock
liability in case a corporation becomes insolvent.   All of these
objects will be substantially subserved by holding that the sec-

tion of the act now in question [1338] has reference to absolute sales of stock, and that it does not comprehend transfers when they are effected by simple indorsement and delivery of stock certificates as collateral security." These extracts from the opinion of the court are but extracts taken from the opinion of the Federal Court of Appeals of the Eighth circuit, in *Masury* v. *Ark. Nat. Bank,*, 93 Fed. Rep. 603, which is a case exactly applicable to the case at bar, and the only case applicable to this one in all essential particulars. The objects of the statute referred to in the extract are fully attained in other sections of the act than 1338, for we find that by section 1342 no transfer of stock can be lawfully made by a stockholder except on the books of the corporation. These books therefore show all that is necessary for the purposes of taxation. The same may be said as to the purpose of ascertaining who had lawful control of the corporation from time to time, and who are responsible for its management, and for its debts as stockholders. It is true that the court of appeals contended with its usual ability to weaken the force, if not destroy the effect, of section 1342, but it was compelled to the conclusion at last that a transfer of stock by indorsement and delivery of the certificates, notwithstanding the inhibition of the statute, was good as against subsequent *bona fide* purchasers for value, forgetting, perhaps, that the case in hand had nothing whatever to do with the subsequent *bona fide* purchasers, but with creditors of the stockholders only. It is sufficient to say, in response to all this reasoning, that the statute attributes no such purposes to section 1338 as are attributed to it by the court of appeals.

It is argued that a collateral assignee cannot vote or otherwise take part in the management of the corporation. Is not that merely begging the question? Why can he not vote if the record shows him to be the holder of a certificate of stock? Is not that a mere assumption at least, which is necessary to give the contention a basis to rest upon? By what authority can we say that? The law declares who are and are not stockholders, and it also gives stockholders the right to vote. It simply says no one is a stockholder unless his name appears

on the books as such.   What interest in  stock will constitute him a stockholder is not defined in the act, nor is there any expressed limitation.   Therefore the term "transfer of stock," a broad expression in itself, must be allowed its full and unrestricted meaning, and allowed to cover all interests that can be or are shown by the record to be transferred.   Cases are cited in support of the theory of the court of appeals, but they are cases from jurisdictions uninfluenced and uncontrolled by statutes such as section 1338.

The last argument of the court of appeals we shall notice is involved in the following quotation from the decision, to-wit: "Moreover, if the  section of the act now under consideration is construed so as to embrace a  pledge of stock certificates, as well as absolute sales  of stock, such  securities will  needlessly embarrass and restrict the circulation of such securities, and prevent their use for legitimate business purposes.   It is a well known fact that stock certificates frequently circulate in places far removed from the home of the corporation  by which they were issued, that in all commercial centers they are commonly transferred from hand to hand like negotiable  paper, and that they are hypothecated for temporary loans by a  simple  indorsement and delivery thereof, the latter being perhaps the most common use *to* which such securities are put.   In  the great majority of cases, when stock is merely pledged for a  loan, no record of the transfer is made on the books of the corporation, and, in the judgment of laymen, the making of such a record seems to be a needless formality.   The trend of modern decisions has been to encourage the free circulation of stock certificates in the mode last indicated, on the theory that they are a valuable aid to commercial transactions, and that the public interest is best subserved by removing all restrictions against their circulation, and by placing them as nearly as possible on the plane of commercial paper.   In the state of Massachusetts, where a different rule once obtained and was for a long time adhered to (*Fisher* v. *Bank*, 5 Gray,  373; *Newell* v. *Williston*, 138 Mass. 240), a law has recently been enacted which  makes the delivery of a stock certificate, with a written assignment indorsed thereon, effectual to convey a title to the stock as against all  parties, thereby conforming

the law of that state to the law as it has been established by the
great weight of judicial opinion in most of the other states."
It seems from this that Massachusetts formerly had a statute
similar to our own, and the courts of that state construed the
statute according to its expressed language, and continued to
do so; and the legislature had to change the law before the new
policy could be adopted and put in force. In our way of
thinking that is exactly against the reasoning of the court.
The policy of the law is established and regulated by the legis-
lative branch of the government. It will be observed that in
the last extract the basic idea of the opinion is still the theory
that stock can be lawfully transferred by indorsement on and
delivery of the certificates of stock, notwithstanding the pro-
hibition of section 1342.

We regard the decision in the case of *Masury* v. *Ark.
Nat. Bank* as being applicable in all respects to this case, and
that the decision of the majority of this court is simply an
adoption of that decision. Therefore we have deemed it nec-
essary to make our criticism upon it in the main.

The provision as to registration, and its effect, contained
in section 1338, is a valid provision, and must be complied
with strictly according to its terms, after the rule pertaining to
the registration of mortgages. It constitutes the notice, and no
other can supply its place. There is no conflict between *Byers*
v. *Engles*, 16 Ark. 543, and *Main* v. *Alexander*, 9 Ark. 112.
Each construes a statute, and the statutes are differently word-
ed, and that creates the difference.