[S. F. No. 5323.    Department One.—April 7, 1910.]

## NATIONAL BANK OF THE PACIFIC, Respondent, v. WESTERN PACIFIC RAILWAY COMPANY, Appellant.

Corporations—Purchase of Stock—Non-Transfer upon Books—Attachment by Corporation—Compelling Transfer Free from Lien.—Where the plaintiff bank purchased stock for value in defendant railway company from its debtor, which was not transferred on its books at the time of the attachment thereof by such defendant for the debt, the plaintiff, as such purchaser, may, pending the attachment suit, maintain an action against the defendant to compel a transfer of such stock upon its books, and the issuance of a certificate of stock to the plaintiff, free from the lien of the attachment.

ID.—GENERAL RULE AS TO EFFECT OF ATTACHMENT.—The general rule is. that a creditor who attaches property for his debt obtains a lien only upon the title or interest which the debtor has in the property at the time of the levy, and that if, at that time, all title and interest, therein had passed from the debtor to a third person the creditor gets nothing by the levy.

ID.—EXCEPTIONS—TRANSFERS DECLARED VOID AS TO CREDITORS.—Whenever transfers are expressly made void as to creditors, they form exceptions to the general rule as to the effect of an attachment.

ID.—GENERAL RULE AS TO ATTACHMENT OF UNREGISTERED STOCK—CONSTRUCTION OF STATUTE—BONA FIDE PURCHASERS PROTECTED—STARE DECISIS.—Section 324 of the Civil Code providing that a transfer of unregistered stock "is not valid except as to the parties thereto" is. judicially construed under the rule of *stare decisis,* as merely imputing its invalidity as against subsequent purchasers without notice,. and its validity in all other respects, so that the general rule prevails that a transfer of unregistered stock is valid as against a mere· levy of attachment or execution by a creditor against the person in· whose name it may remain upon the books.

ID.—ACCESS TO BOOKS LIMITED—BOOKS NOT GENERAL NOTICE.—The· right of access to the books of the corporation is confined to the stockholders and creditors of the corporation. The creditors of individual stockholders have no such right of access, and the books cannot be notice to them, nor to all the world, since the world has: no such right of access.

ID.—TENDENCY TOWARDS GENERAL RULE AS TO UNREGISTERED STOCK.— The decisions and statutes of the various states show very clearly that public policy and the legitimate demands of trade have gradually caused the courts and legislatures of the various states to establish the rule that a sale or pledge of a certificate of stock has precedence over a subsequent attachment levied on that stock for the· debt of the vendor or pledgor, and that the failure of the pledgee or· purchaser to obtain a registry of the stock is not fatal to his interest in the stock.

ID.—LANGUAGE OF CERTIFICATE AS TO MODE OF TRANSFER—TRANSFER AND PROTECTION AGAINST ATTACHMENT UNAFFECTED.—The language· in the certificate reciting that it was transferable only on the books. of the company and on surrender of the certificate, merely gave notice of the rights of the corporation as to transfers, but did not affect the transfer, nor change the relative rights of the parties, nor· make the unregistered transfer subject to the attachment lien.

APPEAL from a judgment of the Superior Court of the·· City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinon of the court.

Charles S. Wheeler, Warren Olney, Jr., and F. W. M. McCutcheon, for Appellant.

Gavin McNab, and R. P. Henshall, for Respondent.

SHAW, J.—A general demurrer to the complaint was overruled. The defendant refused to answer and judgment was given for plaintiff upon the facts stated in the complaint. The defendant appeals.

On June 15, 1908, the plaintiff became the owner of one thousand shares of the capital stock of the defendant corporation, previously belonging to J. Dalzell Brown. The certificate for these shares was duly indorsed by Brown and delivered 'to the plaintiff. The consideration paid for the stock by the plaintiff was twenty-five thousand dollars. Brown was indebted to the defendant in a sum exceeding fifty thousand dollars. On July 28, 1908, the defendant began an action against Brown to recover said debt and caused a writ of attachment to be issued therein, which on July 29, 1908, was levied on Brown's interest in said stock. The action is still pending. At the time the attachment was levied, the transfer of the stock from Brown to the plaintiff had not been entered on the books of the defendant corporation, as required by section 324 of the Civil Code, and the defendant had no notice or knowledge of said transfer. This condition continued until March 11, 1909, when the plaintiff presented its certificate of stock to the defendant and demanded that the transfer from Brown to plaintiff be duly entered upon the defendant's books. Defendant refused to comply with the demand, basing its refusal on the claim that, by virtue of the levy of said attachment, it had a lien upon said stock prior and paramount to the right and title of plaintiff thereto. This action was thereupon begun to compel the defendant to enter the transfer on its books and issue to the plaintiff a new certificate for the stock, free from the lien of the attachment. The judgment directed that this be done.

Section 324 of the Civil Code declares that shares of stock in a corporation are personal property and that they may be transferred by indorsement and delivery of the certificate. It further provides that "such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books.

of the corporation as to show the names of the parties by whom and to whom transferred, the number of the certificate, the number or designation of the shares, and the date of transfer."

"The rights or shares which a defendant may have in the stock of any corporation" may be attached by leaving with the proper officer of the corporation a copy of the writ and a notice that the stock or interest of the defendant is attached in pursuance of the writ (Code Civ. Proc., secs. 541, 542, subd. 4). When such stock is sold on execution, the sheriff must give the purchaser a certificate of the sale. "Such certificate conveys to the purchaser all the right which the debtor had in such property on the day the execution or attachment was levied." (Code Civ. Proc., sec. 699.)

The general rule is that a creditor who attaches property for his debt obtains a lien only upon the title or interest which the debtor has in the property at the time of the levy, and that if, at that time, all title and interest therein has passed from the debtor to a third person, the attaching creditor gets nothing by the levy. (*Tuohy* v. *Wingfield*, 52 Cal. 319; *Howell* v. *Foster*, 65 Cal. 173, [3 Pac. 647]; *Ward* v. *Waterman*, 85 Cal. 508, [34 Pac. 930].) Where a statute declares a previous transfer of title void as to creditors of the transferrer, there is an exception to this rule. The exception is of course founded upon the theory that as the law makes the transfer void as to the creditor, there is, as to him, no transfer at all, and the title to the property, for his benefit, remains in the debtor, notwithstanding a previous legal transfer good as against all other parties. Examples of this are found in the case of transfers tainted with actual fraud, and transfers of personal property in good faith not followed by immediate delivery and actual and continued change of possession. The latter are conclusively presumed to be fraudulent. All such transfers are expressly declared to be void as to the creditors of the person making the transfer. (Civ. Code, secs. 3439, 3440.) Another example is that of a chattel mortgage not executed and recorded in the prescribed mode, which the statute declares to be absolutely void as against other creditors of the mortgagor, regardless of the good faith of the transaction (Civ. Code, sec. 2957). The contention of the defendant is that the provisions in section 324, declaring that a transfer of

corporate stock is not valid, except as to the parties, until it is duly entered on the corporation books, is intended for the benefit of the creditors of stockholders, and, therefore, that its effect is to make an unregistered transfer absolutely void and subject to any attachment or execution against the previous owner.

If this doctrine is correct, the logical result would be that knowledge of the attaching creditor or execution purchaser, at the time of the levy or execution sale, that there had been a prior unregistered transfer for value, would be an immaterial circumstance which would neither protect the holder of the stock, nor vitiate or affect the lien of the attachment or the title conveyed by the execution sale. If the attempted transfer by indorsement and delivery of the certificate, without entry thereof on the books of the company, is wholly void as to the attaching creditor, the levy would create a lien superior to the title of the indorsee. It would operate as if there had been no previous transfer of the certificate by the record holder, and a registration after the levy, or a subsequent notice, would be of no avail to the indorsee. This rule prevails in the case of a levy on goods, after a sale which is void as against creditors, under section 3440 of the Civil Code. Notice to the creditor, or to an intending purchaser, in such a case, that the third person holds the title, whether given before or after the levy, does not affect the attachment, nor invalidate the title of the execution purchaser. The defendant does not contend that this strict rule applies to corporate stock but is willing to concede that a holder thereof for value, by a previous unregistered transfer in good faith, would prevail against an attaching creditor or execution purchaser with notice of the transfer. The decisions in this state on this point uniformly hold that the law is in accordance with this concession. (*Weston* v. *Bear River etc. Co.,* 6 Cal. 425; *People ex rel. Mead* v. *Elmore,* 35 Cal. 653; *Farmers' National Gold Bank* v. *Wilson,* 58 Cal. 600; *Blakeman* v. *Puget S. I. Co.,* 72 Cal. 321, [13 Pac. 872]; *Spreckels* v. *Nevada Bank,* 113 Cal. 272, [54 Am. St. Rep. 348, 45 Pac. 329].)

The defendant relies mainly on a prior decision in *Weston* v. *Bear River etc. Co.,* reported in 5 Cal. 186, [63 Am. Dec. 117], and on the decisions in *Strout* v. *Natoma W. Co.,* 9 Cal. 78, and *Naglee* v. *Pacific Wharf Co.,* 20 Cal. 529.

The Weston case was an action by Weston to compel the defendant corporation to transfer certain shares of its stock to him on its books. On the first trial of the case the lower court held the unregistered transfers good, and gave judgment against the plaintiff. On appeal the supreme court reversed this judgment. (5 Cal. 186, [63 Am. Dec. 117].) Afterwards the case was again tried, and judgment in the lower court was given for the plaintiff. Upon a second appeal this judgment was reversed. (6 Cal. 425.) In the report of the first case the facts are not stated, and the plaintiff is described merely as an attaching creditor. It is not stated whether he was or was not a purchaser on execution sale, or whether he had or had not notice of the prior assignment of the certificates. It was apparently regarded as immaterial, and, as above stated, the logic of the decision would make it so. But there is no discussion or mention of the point. The court considered the effect of sections 12 and 144 of the act of April 22, 1850, upon stock transfers. (Stats. 1850, p. 347.) Section 12 is identical with section 324 of the Civil Code. Section 144 declared that until there was a proper entry thereof on the corporation books, "no transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred liable for the debts of the company." Holding these provisions imperative and prohibitory, and not intended as a protection to the company alone, the court states the reason for giving the statute effect as a declaration that an unregistered transfer is void as to the creditors of the transferrer, as follows: "The legislature intended to protect the public from the frauds which might be perpetrated by a sale or hypothecation of the certificates passing the legal or equitable title, while the books of the company induced credit to the vendor, *by holding him out to the world as the owner of such stock.*" (The italics are ours.) In *Strout* v. *Natoma Co.,* 9 Cal. 78, the question was not involved, but the court quotes the above extract from the first Weston decision, saying: "The principle clearly established by this decision is, that the books of the corporation must constitute the test of the rights of third parties. They can look only to the books as their criterion." The citation in the opinion to "6 Cal. 425" as the place where the first Weston case is reported seems to be a clerical error. The court does not mention the second decision and was apparently unaware

of the fact that it had declared a contrary doctrine. In *Naglee*
v. *Pacific Wharf Co.*, 20 Cal. 529, the stock was attached after
the transfer from Stebbins to Naglee. Before the execution
sale in the attachment suit against Stebbins, Naglee applied to
the company to have his transfer entered on its books. The
company refused to do so, assigning the attachment as the
cause. Shortly afterwards the stock was sold for its market
value, on the execution, to a purchaser without notice of the
transfer. Naglee sued to compel a transfer to him. The judg-
ment denying this relief was affirmed on the authority of the
Weston cases. As the stock had been sold to an innocent pur-
chaser, it is plain that the soundness of the decision in the
first case, to the effect that a mere levy created a lien superior
to an unregistered transfer, was not essential to the decision.
The court says, however, that the second decision in the Wes-
ton case was not intended to overrule or qualify the first.
From this it will be seen that the doctrine of the first Weston
decision was not involved in either the Strout case or the
Naglee case, and hence the expressions in the opinions in these
two cases to the effect that that doctrine is settled in this state,
are not entitled to great weight, especially in the face of prior
and subsequent decisions declaring the contrary rule to be
settled.

Upon the second appeal in the Weston case (6 Cal. 425) it
was shown that before the action was begun, Weston, the at-
taching creditor, had purchased the stock at the sheriff's sale in
his attachment suit against Lovell, and that before purchasing
it he had notice of the prior unregistered transfers and pledges
thereof. Upon this the court says: "A party who purchases at
sheriff's sale, stocks of an incorporation, knowing that the cer-
tificates of such stock have been previously hypothecated, is
chargeable with notice of such fact, and takes subject to the
claim of the pledgee. Neither the incorporation law of 1850,
or of 1853, was intended to cover a case of this kind, but ap-
plied only to transfers and purchases in good faith without
notice. In the case of *Weston* v. *Bear River Water & Mining
Company*, 5 Cal. 186, [63 Am. Dec. 117], this point was not
presented to the consideration of the court, and the case went
off on a construction of the statute only." The question
whether the lien of the levy was, of itself, superior to the right
of a holder of the certificate whose transfer was not entered

on the books, was necessary to this decision, for if such lien was superior it would have inured to the benefit of a purchaser even if he had notice, if the case is to be treated as a fraudulent transfer. The ruling that it was so far inferior that a subsequent notice before execution sale would destroy the lien, is directly contrary to the principle upon which the first Weston decision was based, and practically overrules it.

The other decisions heretofore cited contain repeated declarations in approval of the doctrine of the second Weston case. In *People* v. *Elmore,* after referring to the Weston and Naglee decisions the court says that it was held in those cases that unregistered transfers of stock "are nevertheless valid as against all the world, except subsequent purchasers in good faith, without notice." This was said to be binding under the rule of *stare decisis,* if for no other reason. *Parrott* v. *Byers,* 40 Cal. 614, at page 625 quotes this passage from the Elmore case, designating it as the principle established in this state. This was reiterated in *Winters* v. *Belmont Co.,* 53 Cal. 431; *Farmers' etc. Bank* v. *Wilson,* 58 Cal. 600; *Blakeman* v. *Puget S. I. Co.,* 72 Cal. 321, [13 Pac. 872]; *Spreckels* v. *Nevada Bank,* 113 Cal. 272, [54 Am. St. Rep. 348, 45 Pac. 329], and in *West Coast etc. Co.* v. *Wulff,* 133 Cal. 315, [85 Am. St. Rep. 171, 65 Pac. 622]. In view of these repeated affirmations of the doctrine, we again declare, what has been said so often, that the principle of *stare decisis* applies, and that it is now too late to change the rule, even if we were not satisfied with it. For many years it has been generally understood that in this state shares of stock in a domestic corporation, thus transferred or pledged, were safe as against a mere levy of an attachment or execution against the person in whose name they stand on the corporation books, and the commercial business of the people has been carried on upon that basis. A rule thus settled and relied on should not be disturbed.

Counsel for defendant contend that the precise question here presented was not involved in any of the cases, except the first Weston case, and that the declarations in the subsequent decisions, contrary to that case, should be disregarded as *obiter dicta.* Even if this were so, since the *dicta* have been accepted and acted upon for so many years as the established law, they should be adhered to, if possible. But, as we have shown, this rule cannot be sustained without overthrowing the principle

upon which the first Weston case rests, and every decision holding that a purchaser for value at an execution sale, with notice of a prior unrecorded transfer, obtains no title against the indorsee and holder of the certificate, in effect, overrules that case. In *Farmers' etc. Bank* v. *Wilson* the effect of a mere levy was involved, and the court very properly stated the rule, so that the parties would understand that a future execution purchaser with notice would take only the pledgee's right of redemption. That case is direct authority for the proposition.

It may be remarked further that the reason given, as above stated, in the first Weston case, for the rule there adopted, had no foundation in the law then in force and has none under the present law. It was founded on the notion that "the stock and transfer book" of a corporation is made a public record, accessible to all persons, intended to give notice to everybody of the *status* and ownership of the title to the stock, and that it is therefore available to the creditors of the stockholders and to persons dealing with them with respect to the stock. This is the law of some of the states where the rule contended for by the defendant prevails, but it is not the law of this state. (Civ. Code, sec. 378.) It was not the law with respect to mining corporations at the time the Weston cases were decided. (Stats. 1850, p. 368, sec. 144; Stats. 1853, p. 90, sec. 18.) The creditors of the individual stockholders have no such right of access, and the books could not constitute notice to them. Nor could these books hold any person out to the world as the owner of any stock, since the world could not have access thereto. Stockholders and creditors of the corporation are the only persons who have the right to inspect the books. (Civ. Code, sec. 378.)

The authorities of other states having similar statutes differ somewhat in their interpretation thereof. The following cases hold that the levy of an attachment or execution is not, of itself, paramount to the right of a holder of the certificate under a prior unregistered transfer from the attachment or execution debtor: *Commonwealth Bank* v. *Kortright,* 22 Wend. 348, [34 Am. Dec. 317]; *Lund* v. *Wheaton,* 50 Minn. 36, [36 Am. St. Rep. 623, 52 N. W. 268]; *Thurber* v. *Crump,* 86 Ky. 408, 418, [6 S. W. 145]; *Mapleton Bank* v. *Standrod,* 8 Idaho, 740, [71 Pac. 119]; *Port Townsend N. B.* v. *Port Townsend etc. Co.,* 6 Wash. 597, [34 Pac. 155]; *Van Cise* v. *Mer-*

*chants' N. B.,* 4 Dak. 485, [33 N. W. 897]; *Newberry* v. *Detroit etc. Co.,* 17 Mich. 157 (per Cooley, J.); *Batesville T. Co.* v. *Meyer-Schmidt etc. Co.,* 68 Ark, 115, [56 S. W. 784]; *Masury* v. *Farmers' National Bank,* 93 Fed. 603, [35 C. C. A. 476], (construing statute of Arkansas).

The contrary construction is adopted in *Lyndonville N. B.* v. *Folsom,* 7 N. Mex. 611, [38 Pac. 253]; *Sabin* v. *Bank,* 21 Vt. 353, and *Application of Murphy,* 51 Wis. 519, [8 N. W. 419]. Also in Iowa, where the statute is the same as our section 234, but the stock book is open to the public: *Fort Madison Co.* v. *Bank,* 71 Iowa, 270, [60 Am. Rep. 789, 32 N. W. 336]; *Ottumwa S. Co.* v. *Stodghill,* 103 Iowa, 437, [72 N. W. 669]; and in Colorado, where the statute declares that the transfer "shall not be valid for any purpose whatever," until it is entered on the books: *First Nat. Bank* v. *Hastings,* 7 Colo. App. 129, [42 Pac. 691].

In several of the states under statutes which do not declare such transfers invalid between the parties, but merely declare that it is transferable only on the books of the corporation, it is held that the mode must be followed in order to pass the title, and that a levy will prevail over a transfer not properly made. In other states the opposite rule is followed. We do not consider it necessary to discuss these cases. The condition of the law is well stated in 2 Cook on Corporations at the end of section 490, as follows: "It may be added in regard to this whole subject that the decisions and statutes of the various states show clearly that public policy and the legitimate demands of trade have gradually caused the courts and legislatures of the various states to establish a rule that a sale or pledge of certificates of stock has precedence over a subsequent attachment levied on that stock for the debt of the vendor or pledgor, and that the failure of the pledgee or purchaser to obtain a registry on the corporation books is not fatal to his interest in the stock." See note 1 to section 488 of Cook for list of states which have changed their statutes to conform to this rule, where the courts had previously adopted the opposite doctrine.

The certificate here in question recited that it was transferable only on the books of the company and on surrender of the certificate. This did not affect the transfer. The right to sell, transfer, or pledge corporation stock is given by statute and it

cannot be curtailed by a recital in the certificate. The recital served to give notice of the rights of the corporation under the statute, with respect to transfers, but it did not change the relative rights of the stockholder and third persons, with respect to each other, nor make the unregistered transfer subject to the attachment lien.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.