[Civ. No. 8188.   First Appellate District, Division One.—May 6, 1932.]

SUTTER INVESTMENT COMPANY (a Corporation), Respondent, v. H. VINCENT KEELING, Appellant.

Charles N. Douglas for Appellant.

Dozier & Kimball for Respondent.

PARKER, J., *pro tem.*—This action is to determine adverse claims in and to certain shares of stock of the Market Street Railway Company, and for such ancillary relief as may be meet after adjusting the ownership. The case was tried upon an agreed statement of facts. Judgment went for plaintiff, and defendant Keeling presents this appeal. A summary of the facts follows:

Lea Bleakmore was the owner of certain shares of stock of the Market Street Railway Company. These shares had been pledged to the Wells Fargo Bank as security for the repayment of an obligation of Bleakmore to the said bank. However, the pledgee had given no notice to the Market Street Railway Company of the pledge nor of the fact that the holder had in any manner negotiated or impaired his holdings. There was nothing on the books or records of the Market Street Railway Company to indicate anything but the absolute ownership of Bleakmore. This was the situation on July 1, 1924. On that

date the plaintiff herein commenced an action in the Superior Court of the State of California, in and for the City and County of San Francisco, against Bleakmore to recover a sum of money alleged as due. On August 4, 1924, a writ of attachment was duly issued and thereafter levied, as a result of which the stock in question was attached. Thereafter, on September 23, 1924, plaintiff recovered judgment against Bleakmore, and thereupon execution issued. Levy was duly made and on October 14, 1924, after notice given as required by law, the sheriff sold all of the stock standing of record upon the books of the Market Street Railway Company in the name of Lea Bleakmore to plaintiff. At the sheriff's sale, the plaintiff bid and paid for said stock the sum of $5, the plaintiff being the highest and best bidder for said stock at said sale.

The foregoing discloses plaintiff's claim to the stock. The facts stated are more or less sketched for the reason that no question is presented on the validity of any of the proceedings leading up to and including the sheriff's sale.

It was alleged, and not denied, that at all times the stock was and now is of the reasonable market value of $1400. Defendant and appellant Keeling claims the stock by reason of the following facts: While the stock was pledged with the Wells Fargo Bank, Keeling purchased the same from Bleakmore in good faith and for a valuable consideration, but no transfer was ever made on the books of the corporation from Bleakmore to appellant, nor was any of the stock reissued to Keeling. Keeling at no time gave notice of his purchase to the pledgee, to the Market Street Railway Company or to plaintiff. The sale and transfer from Bleakmore to Keeling was made prior to July 1, 1924, which was the date of the commencement of the action by plaintiff against Bleakmore, out of which came the execution. No notice of levy either of attachment or execution was ever given to appellant, nor was any notice given to the pledgee. Subsequent to the sheriff's sale the stock was redeemed from the pledgee and the certificates delivered by the pledgee to appellant. The fact is agreed, and the finding is in accord therewith, that at the time of the sale of said shares of stock by the sheriff and the purchase thereof by the plaintiff, the said plaintiff was acting in good faith and without notice that the outstanding certificates or any

of them had at any time been pledged or had been sold or assigned to appellant.

There is some controversy concerning the scope of the agreed statement of facts and the finding adopting the same. The statement of facts with reference to the rights of defendant Keeling reads as follows: That the defendant Keeling claims title to said shares of stock by reason of having purchased from said defendant Lea Bleakmore (subsequent to the pledge of the same with Wells Fargo Nevada National Bank of San Francisco, and prior to July 1, 1924), in good faith and for a valuable consideration, etc. The trial court's finding follows the identical language, namely, that Keeling claims title to said shares 'of stock, etc. Respondent urges that there is no agreement or finding that Keeling was ever the owner of the stock, and that from the record it is apparent that appellant has only an undetermined claim.

We place no such narrow construction on the language quoted. Appellant had been called upon to assert his claim and he did assert and it was agreed and found that he did make a claim, based upon certain facts. It cannot be construed as a mere claim that he had purchased from Bleakmore; it is a claim of title based upon the fact of such purchase. In other words, we construe the statement and finding as determinative of the facts out of which the claim of title arises, and upon which such claim is asserted. Indeed, this is the theory of the entire case and the obvious theory of the court below. Agreed statements of facts are encouraged and are not to be considered as traps for the unwary, but are to be given an interpretation which will serve the purpose intended.

The question presented on this appeal involves the rights of the holder of unregistered stock as against a purchaser at an execution sale. The subject is exhaustively discussed in the case of *National Bank, etc.*, v. *Western Pacific Ry. Co.*, 157 Cal. 573 [21 Ann. Cas. 1391, 27 L. R. A. (N. S.) 987, 108 Pac. 676]. The rule there announced is that unregistered transfers of stock are nevertheless valid as against all the world, except subsequent purchasers in good faith, without notice And it was conceded upon the authority of *Farmers' Nat. Gold Bank* v. *Wilson*, 58 Cal. 600, that a purchaser under an execution sale, without notice of transfer,

would take the stock free from the claims of the transferee. In *Security C. & S. Bank* v. *Imperial W. Co. No. 1*, 183 Cal. 488, 494 [192 Pac. 22, 24], the rule is again announced as follows: ''One who purchases at execution sale shares of stock of a corporation, . . . in the name of the judgment debtor, is entitled to have the certificate of such shares reissued to him as such purchaser, if at the time of the purchase he acts in good faith and without notice that the outstanding certificate has been assigned or pledged to some person other than the judgment debtor.''

The agreed fact and the finding based thereon in the instant case is, as noted hereinbefore, namely, that the plaintiff at the time of levy of writ of attachment, at the time of the levy of the writ of execution and at the time of the sale of said shares of stock by the sheriff and the purchase thereof by plaintiff, was acting in good faith and without notice. Plaintiff, as the purchaser at the execution sale under its judgment, without notice of the previous assignment, took the stock discharged of appellant's claim. (*American T. & B. Co.* v. *Union S. Co.*, 43 Cal. App. 126 [184 Pac. 508].) We hold, therefore, that plaintiff purchased the shares of stock in question free from appellant's claims under his assignment. To hold otherwise would be to ignore every authority upon the question.

However, contends appellant, the price paid for the shares of stock at the execution sale was grossly inadequate, in that the value of the stock was $1400 and the sale price but $5. The record before us discloses no claim of fraud in the sale, nor in the proceedings leading up to it. The sale was in all respects fair, and the undisputed fact is that plaintiff was the highest and best bidder. There is not a suggestion of unfairness surrounding the transaction, other than the failure to give notice to appellant. In view of the stipulated fact of plaintiff's lack of knowledge of appellant's claim, and no source of information available and no fact claimed to charge plaintiff with constructive notice, we must ignore the argument on lack of notice to appellant. '' . . . mere inadequacy of price, however gross, is not itself a sufficient ground for setting aside a sale legally made. There must, in addition, be proof of some element of fraud, unfairness, or oppression, before a court will be justified in depriving the purchaser of his

legal advantage." (*Rauer* v. *Hertweck,* 175 Cal. 278 [165 Pac. 946, 948]; *Bock* v. *Losekamp,* 179 Cal. 674 [179 Pac. 516]; *Baldwin* v. *Brown,* 193 Cal. 345 [224 Pac. 464].)

In the last-cited case, it was contended that the fact that the creditor was the purchaser at his own sale and therefore had cause to know the true value of the property was additional evidence sufficient, when coupled with gross inadequacy of sale price, to invalidate the sale. The court says: "But unless the appellant could show by either reason or authority that the creditor must be held to a different rule of duty than that applicable to other bidders for property offered at public sale, this circumstance can be of no avail to the appellant since it adds no modicum of weight to the fact of inadequacy of price bid for the property at such sale. No sound reasons and no authority whatever are cited to sustain the appellant's conclusion in this regard."

It is apparent that if Bleakmore, the record owner of the stock, had made no assignment, but still claimed the stock, he would not be heard to urge the ground of inadequacy of execution sale price. We know of no rule which permits the assignee to any different right. Paraphrasing the language of *Farmers' Nat. Gold Bank* v. *Wilson, supra,* whatever the result to appellant, it is his own fault. He had it in his power at the start to avoid all danger by doing what he ought to have done—caused the proper transfer of the stock to have been made on the books of the corporation.

Incidentally, it may be noted that at the time of the sale the stock in question was pledged to its full value or thereabouts, the finding being that the same was pledged for a valuable consideration, and on the basis of its then full and fair market value. This pledge was made in 1921, and appellant acquired title in 1924 subject to the pledge. At the time of the sale under execution, the stock was still pledged so that its net value does not appear. But, argues appellant, plaintiff had no notice of this pledge and therefore as to him the value of the property must be taken as $1400, regardless of the lien thereon. This contention cannot be sustained. The adequacy of the sale price must be determined by the real value of the property sold, regardless of what the purchaser might have known. It would seem

absurd to say that when a purchaser pays $5 for property worth nothing, the price is grossly inadequate because the purchaser thought he was purchasing property of the value of $1400. In any event, the property being hypothecated in 1921 and subject, so far as the record discloses, to the pledge lien at the time of the assignment to appellant, there is then no showing of appellant's injury regardless of the execution sale price. In other words, if at the time of sale under execution, appellant owned the stock, subject to the lien created by Bleakmore to the full value of the stock, appellant was not injured by the sale, nor was the grossness of the inadequacy in the sale price an element of damage or oppression as against appellant.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.