WILLIAM WESTON, Appellant, v. THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY, Respondents.

Under the 12th section of the Act concerning Corporations, passed April 22d, 1850, no transfer of stock is good against third parties, unless the transfer be made upon the books of the company.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

The facts material to the point decided appear in the opinion of the Court.

*William S. Long* and *Tod Robinson* for Appellant.

Stock issued by corporations formed under our statute, is only personal property, and a transfer of the same cannot be made, so as to be effectual for any purposes whatever, except between the parties thereto, unless the transfer is made in accordance with the provision of the statute, requiring that the transfer shall be noted upon the books of the company. §§ 12, 144, 129, of Act concerning Corporations, passed April 22, 1850. Woodsworth on Joint Stock Cos., Law Lib., p. 170. Marlborough Manufacturing Company v. Smith, 2 Conn., 579. Northup v. Curtis, 5 Ib , 246. 3 Ib., 544. 6 Iib., 555. 9 Ib., 493. Story on Conf. of Laws, 315. Morton v. Milne, 6 Binn., 561. Robinson v. Bland, 2 Burr, 1077. 2 Comstock, 447. 4 Har. and J., 838.

*Edwards & English* for Respondents.

Cited United States v. Cutts, 1 Sumner, 138. Bank of Utica v. Smalley, 2 Cow., 777. Quiner v. Marblehead So. Ins. Co., 10 Mass , 480. Sergeant v. Essex Mar. Rail Corp., 9 Pick., 204. Plymouth Bank v. Bank of Norfolk, 10 Pick., 457. Black and others v. Zachal rie and others, 3 How. S. C. R., 513. United States v. Vaughn, 3 Binney, 400.

MURRAY, C. J:, delivered the opinion of the Court. BRYAN, J., concurred. HEYDENFELDT, J., dissented.

The twelfth section of the Act concerning Corporations, passed 22d April, 1850, provides, that " Whenever the capital stock of any cor-

poration is divided into shares, and certificates thereof are issued, such shares may be transferred by endorsement and delivery of the certificates thereof, such endorsement being by the signature of the proprietor or his attorney, or legal representative; but such transfer shall not be valid, except between the parties thereto, until the same shall have been so entered on the books of the corporation, as to show the names of the parties by and to whom transferred, the number and designation of the shares, and the date of the transfer." And section one hundred and forty-four of the same Act is as follows: "It shall be the duty of the trustees of every such corporation or company to cause a book to be kept by the treasurer or clerk thereof, containing the names of persons, alphabetically arranged, who are, or shall within six years have been, stockholders of such company, and showing their places of residence, the number of shares of stock held by them respectively, and the time when they respectively became the owners of such shares, and the amount of stock actually paid in, &c.; and no transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred liable for the debts of the company, according to the provisions of this Act, until it shall be entered therein as required by this section, by an entry showing to and from whom transferred."

In the present case, it is contended that an assignment, by mere deivery, of the certificates of stock is sufficient to defeat the rights of an attaching creditor. The position assumed by the respondents' counsel is, that the sections of the Act above referred to were intended for the protection and government of the incorporation, and cannot be extended to transfers between third parties. That the person to whom the certificates have been delivered has an equitable interest in the stock, which cannot be divested by any subsequent proceedings. In support of this position, a number of authorities have been cited, some of which I propose briefly to review.

In the case of the United States v. Cutts, 1 Sumner, 138, the language of the Act was, that the stock shall be transferrable only on the books of the treasurer, &c." In commenting on this statute, the Court said, "It seems, that the true interpretation of the statute is, that, so far as the United States and the proprietors are concerned, no transfer is to be considered as complete and perfect, so as to pass the legal

ownership of the stock, and make the purchaser the legal owner, until the transfer has been entered upon the public books. No person can transfer the same, as such owner, or entitle himself to receive the divi‑ dends, unless he stands as a recorded proprietor upon these books. And there is a manifest propriety and policy in this view, in making the provision, as it would avoid, on the part of the Government, all inquiries into and examinations of any equitable or other titles, or liens set up, as acquired under a proprietor, by any third person dealing with him. This object may well be effected, without, in the slightest degree, interfering with the validity of any equitable titles or liens ac‑ quired under any agreement between the proprietor and third persons, so far as it regards them respectively. And it would sound harsh, to hold all such agreements between the proprietor and his creditor, or between him and a purchaser, utterly void, *inter se,* unless there were a very *plain and direct expression* in the statute to that effect, which, in this case, there certainly is not."

The reasons thus given by Judge Story, as well as the difference between the phraseology of the Act of 1790, and the Act now under consideration, fully justify the opinion of the Court; but there is, I think, little or no analogy between the cases.

In the case of the Bank of Utica *v.* Smalley, 2 Cowen, 777, it was held that a transfer of bank stock was good as between vendor and vendee, though the Act of incorporation provided that no such transfer should be valid or effectual until registered in a book to be kept by the bank for that purpose, and that the debts due from the vendor to the bank should be first paid. In this case, the Court said, "This pro‑ vision was intended exclusively for the benefit and protection of the bank. Their lien upon the stock for any debts due them cannot be affected by any transfer of the stock; and the only notice of a transfer which they are bound to regard, is a registry of it on their books."

The case of Quiner *v.* Marblehead Social Insurance Company, 10 Massachusetts Reports, 480, as well as that of Sargent *v.* Essex Rail‑ road Company, 9 Pickering's Reports, 204, support substantially the same doctrine.

I have examined several other authorities cited by the respondents' counsel, which maintain the general doctrine of equitable assignments of this kind of property or choses in action. But I have found no case,

where such transfer has been held good, in the face of such an Act of incorporation as that of this State. I shall not dispute, that in the absence of legislation, the transfer of the certificates of stock would be valid; but I regard the statute as imperative in its prohibition. By every rule of construction, the exception excludes every other transfer, and as a necessary sequence, no transfer is good against third parties, unless the same be made on the books of the company. It seems to me that it cannot be fairly contended that this provision was designed as a protection to the company alone. It appears to be sufficiently protected by the 114th section, which makes the person to whom it is transferred liable for the debts of the company; and by the further provision of the same Act, authorizing the directors by by-law to provide for the transfer of such stock; under this latter provision, it would be competent for the company to protect themselves to the fullest extent against imposition or accident.

This alone would be sufficient for practical purposes, and it is not assuming too much to say, that after having delegated to corporations the power of regulating such transfers for their own protection, in going further, and employing words of exclusion, the Legislature intended to protect the public from the frauds which might be perpetrated by a sale or hypothecation of the certificates passing the legal or equitable title, while the books of the company induced credit to the vendor, by holding him out to the world as the owner of such stock.

The conclusion to which I have thus arrived, renders it unnecessary to examine any of the other points presented.

Judgment reversed, with costs.