## APPLICATION OF THOMAS MURPHY, etc.

*March 4 — March 24, 1881.*

CORPORATIONS.    *When assignment of stock invalid as against levying creditor.*

Under sec. 1751, R. S., where certificates of shares in the capital stock of a corporation are issued, no assignment of the shares by indorsement and delivery of the certificates (whether such indorsement is in blank *or otherwise*), is valid, except as between the parties to such assignment, until it is so entered on the books of the corporation as to show the names of the parties to the assignment, and other facts required by the statute; and an attachment or execution creditor whose writ is levied upon such shares before such entry, takes as against the person to whom the certificate has been indorsed and delivered.

APPEAL from the Circuit Court for *Rock* County.

The court, on the application of *Thomas Murphy*, made an order on *A. J. Ray* to show cause why, as secretary of the Janesville Cotton Manufacturing Co., he should not transfer to *Murphy* on the books of that company, share No. 28 of the capital stock of the company. After a hearing, the court made a further order, stating that *Ray* had satisfactorily shown cause for his refusal to make such transfer, and discharging the order to show cause. From the latter order *Murphy* appealed.

For the appellant there was a brief signed by *Frank Brooks*, his attorney, and *F. N. Hendrix*, of counsel, and oral argument by *Mr. Hendrix:*

1. Under sec. 1751, R. S., indorsement and delivery of the certificate is the only valid mode of transferring corporate stock. *Fisher v. Essex Bank*, 5 Gray, 373; *Sabin v. Bank of Woodstock*, 21 Vt., 353. The transfer here in question was such as the statute contemplates. There could be but one transfer of the stock from Doyle to Eldred, and that transfer was made by the written assignment indorsed upon the certificate. Everything said or done by the parties prior to reducing their contract to writing, was merged in the written

assignment.   2. Sec. 1751, R. S., is a general law of the state,
enacted for the benefit of and binding upon all persons alike.
It will not be interpreted, explained or applied upon the
same principles as would a by-law of a corporation.   The lat-
ter might be held to be for the benefit of the corporation only;
but not so the statute.   *State v. Conklin*, 34 Wis., 21; *Sar-
gent v. Ins. Co.*, 8 Pick., 90; *Sargent v. Railway Corp.*, 9 id.,
202; *Fisher v. Essex Bank*, 5 Gray, 373; *Rock v. Nichols*, 3
Allen, 342.   3. Similar statutes have been held, in other states,
to invalidate all unrecorded transfers, as against the creditors
of the assignor.   *Skowhegan Bank v. Cutler*, 49 Me., 315;
*Rock v. Nichols*, 3 Allen, 342; *Weston v. Mining Co:*, 5 Cal.,
186; *Strout v. Mining Co.*, 9 id., 78; *Naglee v. Pacific
Wharf Co.*, 20 id., 529; *White v. Salisbury*, 33 Mo., 150;
*First Nat. Bank v. Ins. Co.*, 45 Conn., 22; see also *Coleman
v. Spencer*, 5 Blackf., 197.   A similar provision in a charter
was held to have a like effect, in *Fisher v. Essex Bank, supra*.
And in some states provisions in by-laws have been construed
in like manner.   *Northrop v. Turnpike Co.*, 3 Conn., 544;
*Oxford Turnpike Co. v. Bunnel*, 6 id., 552; *Helm v. Swig-
gett*, 12 Ind., 194.   In New York there does not appear to be
any law regulating the transfer of corporate stock.   But it
has been there held that a purchaser of stock might rely on the
books of the corporation, and that all unrecorded prior trans-
fers were invalid as to such purchaser.   *N. Y. & N. H. R.
R. Co. v. Schuyler*, 34 N. Y., 30.   A distinction seems to be
made in that state between the rights of a purchaser and those
of a creditor, but no such distinction exists here.   *Stevens v.
Brennan*, 79 N. Y., 54; *Shufeldt v. Pease*, 16 Wis., 659.
3. The language of section 1751 is substantially the same as that
of section 2313, R. S., relating to the filing of chattel mort-
gages, and should receive the same construction.   *Single v.
Phelps*, 20 Wis., 398.

   *William Ruger*, for the respondent, argued, among other
things, that statutes like section 1751, R. S., as well as charter

provisions and by-laws of the same character, are to be construed as having been made for the protection of the corporation and its creditors, and should have given them such effect only as will realize this intent. Ang. & A. on Corp., secs. 353–4; *Newberry v. Manuf'g Co.*, 17 Mich., 141; *Rogers v. Ins. Co.*, 8 N. J. Eq., 167; *Broadway Bank v. McElrath*, 13 id., 24; 17 id., 496; *Blouin v. Liquidators*, 30 La. Ann., 716; *Bank of Utica v. Smalley*, 2 Cow., 770; *Commercial Bank of Buffalo v. Kortright*, 22 Wend., 348, 362; *McNeil v. Bank*, 46 N. Y., 325; *Leitch v. Wells*, 48 id., 585; *Weaver v. Barden*, 49 id., 286; *Johnson v. Underhill*, 52 id., 203; *Holbrook v. N. J. Zinc Co.*, 57 id., 615; *Black v. Zacharie*, 3 How., 483; *Quiner v. Marblehead S. Ins. Co.*, 10 Mass., 476; *Sargent v. Ins. Co.*, 8 Pick., 90; *Eames v. Wheeler*, 19 id., 442; *Duke v. Nav. Co.*, 10 Ala., 82; *Bank of America v. McNeil*, 10 Bush (Ky.), 54; 3 Daly, 218; 44 Ind., 4. Courts which have disregarded this intent and adopted a literal construction, have been constantly engaged in engrafting modifications and limitations to correct or limit the mischief of the first decisions. See *Weston v. Mining Co.*, 6 Cal., 425; *People ex rel. Mead v. Elmore*, 35 id., 653; *Parrott v. Byers*, 40 id., 614; *Colt v. Ives*, 31 Conn., 25; 27 Vt., 425. The respondent's right to hold this property as against the appellant does not depend upon the indorsement and delivery of the certificate. He became the equitable owner of the property represented by it, upon the sale and payment of the purchase price. Section 1751 being in derogation of common-law rights, will not be extended by construction. It makes no reference to, and can have no effect upon, the *sale* of the stock. Nor does it apply to any transfer of the legal title, except transfers by indorsement and delivery of certificates. *Quiner v. M. S. Ins. Co.*, 10 Mass., 476; *Howe v. Starkweather*, 17 id., 242; *Eames v. Wheeler*, 19 Pick., 442; *Skowhegan Bank v. Cutler*, 52 Me., 517; *Thorp v. Woodhull*, 1 Sandf. Ch., 411;

*Chester G. Co. v. Dewey*, 16 Mass., 101; *Durkee v. String-ham*, 8 Wis., 124; *Rice v. Cutler*, 17 id., 351.

ORTON, J.   On the seventh day of July, 1880, an execution on a judgment of the circuit court of Rock county, in favor of the appellant, and against one James Doyle, was duly levied upon one share of the capital stock of the Janesville Cotton Manufacturing Company, as the property of said Doyle, and said share was sold on said execution to the appellant on the thirtieth day of July, 1880, and thereupon the appellant made application to the secretary and business manager of said company, one *A. J. Ray*, to have such share duly and properly transferred to him on the books of the corporation, which was refused; and this is an application to the court for an order that said *Ray*, as such officer, make such transfer.   In opposition to such motion it was shown, that the stock certificate of said share was transferred, by a valid common-law assignment, by the said Doyle, to one F. S. Eldred, on the third day of July, 1880, and on the seventh day of the same month said Eldred presented said stock certificate, so assigned, to have such transfer entered upon the books of the corporation, and new stock issued to him therefor, but after said stock certificate had been levied upon under said execution.   The only general question presented on this appeal is, Was the share of stock, at the time of the levy, subject to such levy as the property of Doyle, notwithstanding such transfer to Eldred, which had not been entered on the books of the company? This question is conclusively answered in the affirmative by the following provision of the statute (section 1751, R. S.): "The capital stock of every corporation, divided into shares, shall be deemed personal property, and when certificates thereof are issued, such shares may be transferred by indorsement of the owner, his attorney or legal representatives, and delivery of the certificates; but such transfer shall not be valid, except

between the parties thereto, until the same shall have been so entered on the books of the corporation as to show the names of the parties by and to whom transferred, the number and designation of the shares, and the date of the transfer."

Whether the first part of this provision authorizes assignments or indorsements in blank or not, the subsequent language, " but such transfer," would have a very narrow, unreasonable and ineffectual signification, if it were construed to refer only to such transfer by blank indorsement.   We think the true meaning of the language is, and the obvious intention of the legislature in using it was, that all transfers of shares should be entered, as here required, on the books of the corporation.   And it is equally clear to us that all transfers of shares not so entered are *invalid* as to attaching or execution creditors of the assignors, as well as to the corporation and to subsequent purchasers in good faith, and, indeed, as to all persons interested, except the parties to such transfers.   All transfers not so entered on the books of the corporation are absolutely void; not because they are without notice or fraudulent in law or fact, but because they are made so void by the statute.   The language of this provision is nearly identical with that in relation to chattel mortgages not filed or accompanied by possession.   Section 2313, R. S.   " No mortgage of personal property shall be valid against any other person than the parties thereto, unless," etc.   Authorities need not be cited, that chattel mortgages not so filed, where there is no change of possession, are *ipso facto* void as to creditors and all others interested, except the parties.   This construction of the above provision is sustained by all authorities where the same or closely similar statutes have been considered and their effect passed upon.

As early as 1838, the statute of the state of Maine " in relation to the mode of transfer of shares in corporate bodies," declared that " the title to such stock shall not pass from such proprietor until such transfer has been so far entered on the

corporate records as to show the names of all the parties thereto and the date of the transfer." In *Fiske v. Carr*, 20 Me., 301, shares of stock had been attached as the property of the assignor before the transfer had been so entered on the records of the corporation, and Chief Justice WATSON says in his opinion—after reviewing many cases in Massachusetts and some other states, where no such statute existed, some of which are cited in this case—"But the objection taken here is, that the entry of the transfer upon the corporate records, to give legal validity to the title, is expressly required by the statute of 1838. And such is the fact, that statute declaring that until this is done the title shall not pass from the proprietor; and the date of the transfer and the names of all the parties thereto are required to be recorded. This was doubtless intended to render accessible, to all persons interested to know, record evidence of the title. This statute is too positive in its terms to be disregarded. In our judgment, therefore, the title to these shares, the assignment notwithstanding, remained in Hammond, and their attachment in behalf of the bank is justified."

In the Revised Statutes of Maine, of 1841, the above provision is changed so as to read: "When the capital of a corporation is divided into shares, and certificates thereof issued, they may be transferred by indorsement and delivery; *but such transfer* of shares is not valid, except between the parties thereto, until the same is so entered on the books of the corporation as to exhibit the names of the parties, the number of the shares, and the date of their transfer."

This is almost the exact language of section 7, ch. 54, R. S. 1849, of this state, and our statute was unquestionably borrowed and adopted almost literally from this statute of the state of Maine, and the construction given to it by the courts of that state is therefore of the highest authority. In *Skowhegan Bank v. Cutler*, 49 Me., 315, the court says, in construing that statute: "No transfer of such stock will secure it from

attachment until it is entered on the books of the corporation, showing the names of the parties, the number of shares, and the date of the transfer."

The state of California adopted literally our statute on this subject in the revision of 1849, by an act concerning corporations, passed in 1850. In *Weston v. The Bear River, etc., Mining Co.*, 5 Cal., 186, Murray, C. J., in passing upon said act, said: " I regard the statute as imperative in its prohibition. By every rule of construction, the exception excludes every other transfer, and as a necessary sequence no transfer is good against third parties unless the same be made on the books of the company." This decision is followed in *Strout v. Natoma W. & M. Co.*, 9 Cal., 78; *Naglee v. Pacific Wharf Co.*, 20 Cal., 529; and all subsequent cases where the question has arisen in that state. We have, therefore, the decisions of the state from which we borrowed this statute, and of the state that borrowed it from us, concurring in its construction, which is quite conclusive authority, without consulting other authorities where similar legal provisions exist, but not in the same language.

But we cannot refrain from citing *Fisher v. Essex Bank*, 5 Gray, 373, in which that able jurist, Chief Justice Shaw, passed upon a similar provision in the charter of the bank in relation to the transfer of the stocks, viz.: "The stock of said bank shall be transferrable only at its banking house and on its books." The chief justice says in his opinion: "The clause itself is too clear to admit of doubt. 'Shall be *transferable* only,'— that is, capable of being transferred; the largest and broadest term to express alienation on one part and acquisition on the other. The word 'only' carries an implication as strong as negative words could make it; that is, in no other mode. It was not to prescribe one mode, leaving others unaffected; it made that mode exclusive." To the same effect is *Union Bank v. Laird*, 2 Wheat., 390, and *Rock v. Nichols*, 3 Allen, 342.

This being the construction of the statute, it follows that the appellant was entitled to have the transfer of said share of stock to him by the sheriff, on the execution sale, entered on the books of the corporation, and the said *Ray*, as secretary and general manager of the company, should have been ordered to so enter the same.

*By the Court.*— The order of the circuit court is reversed, and the matter remitted to said court with directions to enter such order.

CASSODAY, J., took no part.