(December 20, 1902.)

## MAPLETON BANK v. STANDROD.

### [71 Pac. 119.]

CORPORATIONS—STOCK—TRANSFER—PLEDGE.—A written transfer of a certificate of shares of stock in a corporation, made in good faith and for value, and possession taken thereof as a pledge for the payment of a private debt of the assignor, and the transfer not entered on the proper book of the corporation, has preference over a subsequent attachment thereof in favor of a creditor of the assignor or transferrer of the stock.

TRANSFERS OF STOCK—BOOKS OF CORPORATION.—That provision of section 2611 of the Revised Statutes which provides that a transfer of stock, made by indorsement, and delivery of the certificate is not valid, except between the parties thereto until the same is entered upon the books of the corporation, was not intended as a protection to creditors of a stockholder, but was intended to protect the corporation, its members and its creditors.

PLEDGED STOCK—ATTACHING CREDITOR.—Where stock has been pledged and transferred by indorsement, and delivery as security for the payment of a debt and transfer not entered on the books of the corporation, and is thereafter attached at the instance of a creditor of the stockholder, such attachment is valid only against the interest of the assignor therein after the debt has been paid.

(Syllabus by the court.)

APPEAL from District Court of Bingham County.

E. E. Chalmers and N. H. Clark, for Appellants.

The general question is whether the attachment liens acquired by appellants in their suits against Harris or the attempted pledge of said stock by Harris to the Mapleton Bank has the preference of priority. It is here urged on behalf of the appellants that the liens acquired by their attachments are prior and superior to the alleged lien of the Mapleton Bank, for the reason that at the time when the attachments were levied, and when judgments were entered, the said shares of stock stood upon the books of the Farmers' State Bank in the name of said T. A. Harris, and that the transfer by indorsement and delivery of the certificates of stock did not effect a

pledge of the shares as against said attaching creditors.   Upon this general proposition we submit the following authorities: By section 2611 of the Revised Statutes of Idaho it is provided: "Whenever the capital stock of a corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property and may be transferred by indorsement, by the signature of the proprietor or his attorney or legal rep-resentative, and delivery of the certificates, but such transfer is not valid, except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number and designation of the shares and the date of entry." (*Aulbach v. Dahler,* 4 Idaho, 654, 43 Pac. 322; to the same effect is *Lyondonville Nat. Bank v. Folsom,* 7 N. Mex. 611, 38 Pac. 253.) "A transfer of shares of stock is invalid as to creditors, even though they have notice, when made in any other way than that provided by code of 1873, section 1078, which declares that a transfer of shares is not valid except as between the parties thereto until it is regularly entered on the books of the company." (*Ottumwa Screen Co. v. Stodghill,* 103 Iowa, 437, 72 N. W. 669; Thompson on Corporations, sec. 2634, and note.) There is in this case no allegation or proof to the effect that the attaching creditors of the defendant have had notice of the alleged pledge or any knowledge of the facts sufficient to put them on inquiry regarding the so-called pledge. (*Port Townsend Nat. Bank v. Port Townsend Gas etc. Co.,* 6 Wash. 597, 34 Pac. 155.)

F. S. Deitrich, for Respondent.

There is a conflict of authority even where statutes are substantially the same, but we respectfully submit that not only the weight, but the decided tendency, of modern authority clearly favor and sustain the unregistered pledge of corporation stocks as against a subsequent attachment thereof upon a debt of the pledgor.   The phenomenal increase of corporations is one of the marked features of the modern commercial world.   Corporation stocks have come to be one of the most common forms of security; they pass daily from hand to hand.   The facility with

which they can be transferred make them especially attractive to the lender, and hence especially available to the borrower, certificates of stock are therefore more and more demanding to be recognized as negotiable instruments. They are most frequently held by persons far away from the home office of the corporation, and frequently in foreign lands. To require that registration be had every time they are used as a pledge would entail delay, expense and risk, which would be intolerable, and would deprive them of much of their value. Nor is a transfer upon the books of the company desirable from the lender's standpoint. He will be cautious against permitting the corporation records to hold him out as a stockholder, and thus subject him to the possibility of being held responsible as a stockholder to creditors of insolvent companies. Such liability is the inevitable logical result of the doctrine announced in *Aulbach v. Dahler,* 4 Idaho, 654, 43 Pac. 322, where not the rights of a creditor of the pledgor against the pledgee are involved, but of a creditor of a corporation against one who permits the books of the corporation to hold him out as a stockholder, although in fact not a stockholder. Kentucky has a statute in almost the identical language of our section 2611, and the question under discussion was involved in the case of *Thurber v. Crump,* 86 Ky. 408, 6 S. W. 145. (*Railroad Co. v. Schuyler,* 34 N. Y. 30; Lowell on Transfer of Stocks, 93, 95, 96; *Port Townsend Nat. Bank v. Port Townsend Gas etc. Co.,* 6 Wash. 597, 34 Pac. 155.) The vendee of unregistered stock is by the statute simply prevented from asserting his claim as against those to whom the corporation records give notice, namely, the corporation and its creditors and stockholders. (Daniel on Negotiable Instruments, 4th, ed., secs. 1708e, 1708f; Cook on Corporations, 4th ed., secs. 486, 487, 490; Morawetz on Private Corporations, sec. 195 et seq.; Angell and Ames on Corporations, 11th ed., sec. 354; 1 Spelling on Corporations, par. 498; Drake on Attachment, 5th ed., secs. 223, 245, 525, 608; Lowell on Transfer of Stocks, secs. 93, 95, 96; Wade on Attachment, sec. 30, p. 30; *May v. Cleland,* 117 Mich. 45, 75 N. W. 129; *Seeligson v. Brown,* 61 Tex. 114; *Lund v. Wheaton,* 50 Minn. 36, 36 Am. St. Rep. 623, 52 N. W. 268; *Bank v. McElrath,* 13 N. J.

Eq. 24; *Batesville Tel. Co. v. Schmidt Grocer Co.*, 68 Ark. 115, 56 S. W. 784; *Port Townsend Nat. Bank v. Port Townsend Gas etc. Co., supra; Masury v. Bank*, 93 Fed. 603; *Kern v. Day*, 45 La. Ann. 71, 12 South. 6; *McClintock v. Central Bank*, 120 Mo. 127, 24 S. W. 1052; *Tombler v. Palestine Ice Co.*, 17 Tex. Civ. App. 596, 43 S. W. 896; *Goyer v. Weldberger*, 71 Miss. 438, 15 South. 235; *Baldwin v. Canfield*, 26 Minn. 43, 1 N. W. 261; *Telford etc. Turnpike Co. v. Gerhab* (Pa.), 13 Atl. 90; *Morton v. Cowan* (Can.), 25 Ont. Rep. 529; *Weston v. Water Co.*, 6 Cal. 425; *People v. Elmore*, 35 Cal. 653; *Bank v. Wilson*, 58 Cal. 600; *Commercial Nat. Bank v. Bank* (Mass.), 7 Fed. 369; *Spreckels v. Bank*, 113 Cal. 272, 54 Am. St. Rep. 348, 45 Pac. 329; *West Coast Safety Faucet Co. v. Wolf*, 133 Cal. 315, 85 Am. St. Rep. 171, 65 Pac. 623; *Doty v. Larimore etc. Bank*, 3 N. Dak. 9, 53 N. W. 77, 17 L. R. A. 259; *Smith v. Railroad Co.*, 91 Tenn. 221, 238, 18 S. W. 546; *Parker v. Bethel Hotel Co.*, 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706, 713; *Fraser v. Dill*, 11 S. C. 486.) In Daniel on Negotiable Instruments, fourth edition, the author says: Sec. 1708e. (3) "As between the transferee of a certificate of stock and a creditor of a transferrer, it would seem that any *bona fide* assignment of the stock for value would effectually pass the transferrer's interest therein, so far as to supersede the right of an attachment or execution creditor to levy upon it for a debt due by the transferrer. Sec. 1708f. (4) "As between the transferee of a certificate of stock and a third party who has purchased the shares, the better opinion is that a *bona fide* transfer of the certificate carries with it the transferrer's interest in the stock, and that a subsequent purchaser who simply relies on the books of the corporation for information as to who are stockholders, and who buys the shares without taking the certificate, does so at his own peril. The certificate is the muniment of title."

SULLIVAN, J.—This is an action to foreclose a pledge of five shares of the capital stock of the Farmers' State Bank, a corporation doing business at Idaho Falls, state of Idaho, which had been pledged by the defendant T. A. Harris, to the Mapleton Bank, a banking partnership of Mapleton, in the state of

Iowa, and the appeal is from the judgment on the judgment-roll alone. The defendant, T. A. Harris, made no appearance, and the defendants, the Farmers' State Bank and C. G. Peck, secretary thereof, filed disclaimers. The defendants who are appellants, William Lindsey and D. W. Standrod & Co., answered separately, and join in this appeal. The facts were stipulated, and the following is a sufficient statement of them for a decision of this appeal: On July 2, 1900, at Mapleton, state of Iowa, defendant T. A. Harris, executed to the cashier of the said Mapleton Bank his promissory note for $1,500, due six months after date, with interest at the rate of eight per cent per annum, attorney's fees, etc., and at said time and place, as a part of said transaction, and as security for the payment of said promissory note, assigned and transferred to said bank two certificates of shares of the capital stock of the said Farmers' State Bank; one of said certificates being for five shares and one for ten shares, making a total of fifteen shares. Said certificates were transferred by indorsement thereon in writing, and signed by the defendant T. A. Harris, and thereafter the plaintiff bank retained the possession of said stock certificates. Said promissory note was not paid when it became due, and this action was brought to foreclose the pledgee's lien upon said shares of stock on July 23, 1901. Said shares of stock have not been transferred on the books of the corporation, the Farmers' State Bank. On the ninth day of February, 1901, William Lindsey, as a general creditor of said T. A. Harris, brought suit against him in Bingham county, and by writ of attachment sought to attach said shares of stock, and defendants D. W. Standrod & Co., also being general creditors of said defendant Harris, brought suit against him in like manner, and sought to attach said fifteen shares of stock. The said writs of attachment were levied as provided by subdivision 4 of section 4307 of the Revised Statutes, and the secretary of said Farmers' State Bank made return to said writs to the effect that, according to the books of said bank, said Harris was the owner of fifteen shares of the capital stock of said bank, which had not been transferred on the books of said bank corporation. The trial court entered judgment on the facts as stipulated in favor

of the plaintiffs as prayed for in the complaint. The stipulated facts show that the respondents are the transferees, in good faith and for value, as a pledge, of the certificates of stock in question, by a written assignment and the delivery of the certificates of stock to respondents; that the appellants are general creditors of the defendant Harris, and are not purchasers of said shares of stock, either innocent or otherwise, and that all the lien that appellants have upon said stock was acquired by said attachment proceedings, which was subsequent to the written assignment and delivery of said stock certificates to respondents.

The question for determination, as presented by the record, is: Is the lien of a general creditor, arising from the attachment of stock belonging to the attachment debtor superior to the lien of a prior pledge in good faith, and for value, having actual possession of the stock certificates, which had been assigned to him in writing, the attaching creditor having actual notice of such assignment before execution sale? Counsel for appellants, in their printed brief and oral arguments, present the general question whether, under the facts of this case, the attachment lien acquired by appellants or the pledge of said stock by Harris to the Mapleton Bank had preference and contend that the attachment lien has the priority. In support of that contention is cited section 2611 of the Revised Statutes, which is as follows: "Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the proprietor, or his attorney, or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the name of the parties by and to whom transferred, the number and designation of the shares, and the date of the entry. Corporations may, by by-laws, provide that no transfer of its stock shall be made upon its books until all indebtedness to the corporation of the person in whose name the stock stands, whether for assessments, calls, or otherwise is paid." Under statutes of other states, like the section

of our statute above quoted there is a conflict of decisions as
to their proper interpretation, but upon a careful investigation
of those decisions we find that the decided weight is in favor
of sustaining the rule that a written transfer of stock, made in
good faith, and for value, although not entered on the books of
the corporation, has preference over a subsequent attachment
thereof in favor of a creditor of the assignor of the stock.   Said
section 2611 declares that, when certificates of shares of stock
are issued, such shares are personal property, and may be trans-
ferred by indorsement by the signature of the owner or his
attorney or legal representative and a delivery of the certifi-
cates, which was done in the case at bar.   But the last clause
of said section provides that such transfers are not valid, except
between the parties thereto, until the same are entered on the
books of the corporation with the formalities therein prescribed.
Construing that provision with other sections of our statutes
in relation to corporations, it is clear that that provision was
not intended to apply to strangers or personal creditors of
stockholders, or to govern the relation between third parties and
stockholders.   That  provision  affects  business  transactions
only, with which the corporation is connected, or in which it
has an interest.   Section 2591 of the Revised Statutes relates
to corporations, and provides that a book of by-laws must be
kept, which shall be open to the inspection of the public.   Sec-
tion 2639 provides that certain records must be kept of the
business transactions of the corporation, and that all such
records shall be open to the inspection of any director, mem-
ber, stockholder, or creditor of the corporation.   The records
provided for by that section are not required to be open to the
inspection of the public, but must be open to the inspection of
any director, member, stockholder, or creditor of the corpora-
tion.   Creditors of the corporation may inspect the records
kept under the provisions of that section, but private creditors
of a director, member, or stockholder are not, by its terms,
given the right to inspect the same.   Section 2640 of the Re-
vised Statutes  provides that, in addition to the records re-
quired to be kept by section 2639, corporations for profit must
keep a book, to be known as the "Stock and Transfer Book,"

in which must be kept, among other things, transfers of stock, which book must be kept open to the inspection of any "stockholder, member, or creditor." That book is not required to be kept open to the inspection of private creditors of stockholders or the public, but to "any stockholder, member or creditor." "Creditor," as used in that section, means a creditor of the corporation, not a private creditor of a stockholder. That being true, that part of section 2611 which provides that transfers of stock by written assignment and delivery are not valid, except as between the parties thereto, until the same are entered upon the books of the corporation, was not intended to protect the public, or a private creditor of a stockholder, but was intended for the protection of the corporation, its members and creditors. It was not intended to make invalid the transfer of stock by indorsement and delivery, and not entered on the books of the corporation for the benefit of creditors of stockholders. And in case of a pledge of shares simply by indorsement and delivery, as in the case at bar, an attachment by a creditor of the assignor would only be valid against the interest of the assignor after the debt had been paid for the payment of which the stock had been pledged. It would be remarkable if, in the enactment of said section 2611, it was intended to apply to the creditor of a stockholder, that such creditor was not permitted to examine the record, where all transfers of stock must be entered. *Aulbach v. Dahler*, 4 Idaho, 654, 43 Pac. 322, decided by this court, is cited as sustaining appellants' contention. That was the case of a creditor bringing suit against the corporation bank to recover on certificates of deposit amounting to about $3,000, and the question involved there was whether a shareholder was liable for the unpaid balance on his stock, he claiming that he had sold the stock, but had failed to have the transfer entered on the books of the corporation. That action was brought to enforce a stockholder's liability by a creditor of the corporation, and is not in point. Kentucky has a statute almost, if not quite, identical with our section 2611, the construction of which was involved in the case of *Thurber v. Crump*, 86 Ky. 408, 6 S. W. 145. The court said: "But the section *supra* does not

operate as a registration law in the interest of the creditors of the stockholder, for the reason that the books of the company are not required to be kept open for the inspection of the public. The books are required to be kept open to the stockholders only. Outsiders have no right to demand an inspection of the books. Therefore, the section in question was not intended for the protection of creditors. As to them, the stock of the stockholder is as unrecorded stock; as to the creditor, the stock of the stockholder is as though the stockholder held it in his pocket on some private individual, in which latter case a *bona fide* transfer for value is good against the transferrer's creditors. So, in the case at bar, the recording of the transfer of stock on the books of the company, not being required for the benefit of the stockholder's creditors, but for the benefit of the company and purchasers, the transfer of the stock without the transfer being entered upon the books of the company limited the passage of the legal title strictly to the vendor and vendee, as between the vendee and the company and a subsequent purchaser for value and without notice of the prior purchase at the time he had his transfer recorded on the books of the company; but, as between such purchaser and the creditors of the stockholder, the purchaser acquires a perfect legal title. (See *Railroad Co. v. Schuyler,* 34 N. Y. 30; Lowell on Transfer of Stocks, 93, 95, 96." See, also, *Port Townsend Nat. Bank v. Port Townsend Gas etc. Co.,* 6 Wash. 597, 34 Pac. 155; Daniel on Negotiable Instruments, 4th ed., secs. 1708e, 1708f; Cook on Corporations, 4th ed., secs. 486, 487, 490; 1 Morawetz on Private Corporations, sec. 195 et seq.; Angell and Ames on Corporations, 11th ed., sec. 354; 1 Spelling on Corporations, par. 498; Drake on Attachment, 5th ed., secs. 223, 245, 525, 608; Lowell on Transfer of Stocks, secs. 93, 95, 96; Wade on Attachment, sec. 30.) As numerous decisions from many state courts are cited in the text-books above referred to upon the question under consideration, we shall not cite them here. Appellant cites *Weston v. Mining Co.,* 5 Cal. 186, 63 Am. Dec. 117, and note, *In re Murphy,* 51 Wis. 519, 8 N. W. 419, and *Ottumwa Screen Co. v. Stodghill,* 103 Iowa, 437, 72 N. W. 669, as supporting his contention. Counsel evidently overlooked

the fact that *Weston v. Mining Co., supra,* was again before the supreme court of California in 6 Cal. 425. In the latter case the court held that a party who purchases at sheriff's sale stock of an incorporation, knowing that the certificates of such stock have been previously hypothecated, is chargeable with notice of such fact, and takes subject to the claim of the pledgee, even where the transfer has not been made on the books of the corporation. In *People v. Elmore,* 35 Cal. 653, the court, after citing *Weston v. Mining Co.,* 5 Cal. 186, 6 Cal. 425, and *Naglee v. Wharf Co.,* 20 Cal. 529, 63 Am. Dec. 117, and note, says it was held in those cases "that transfers of stock which had not been entered on the books of the company, as provided in the statute, are nevertheless valid as against all the world, except subsequent purchasers in good faith without notice." The same doctrine is reaffirmed in *Bank v. Wilson,* 58 Cal. 600, and *Spreckels v. Bank,* 113 Cal. 272, 54 Am. St. Rep. 348, 45 Pac. 329, 33 L. R. A. 459. The doctrine as laid down in *Weston v. Mining Co., supra,* has been greatly modified, if not overruled entirely, by later decisions. The above-cited cases from Wisconsin and Iowa cite the case of *Weston v. Mining Co., supra,* as authority. Those courts evidently were not cited to the same case in 6 California, and later decisions of the California court limiting and distinguishing the first decision. The California supreme court is evidently inclined to take a view much more liberal to the pledgee than that taken in the Weston case, but refrains from doing so because of its regard for the principle of *stare decisis.* It is not necessary for us to extend this opinion, for from an examination of the authorities above cited the view we take of the question under consideration is fully sustained, and the reasons for that rule of construction are forcibly and succinctly set forth in the authorities above cited, and at section 490 of Cook on Corporations the author closes his discussion of this question as follows: "It may be added, in regard to the whole subject, that the decisions and statutes of the various states show conclusively that public policy and the legitimate demands of trade have gradually caused the courts and legislatures of the various states to establish the rule that a sale or pledge of certificates of stock has

precedence over a subsequent attachment levied on that stock for the debt of the vendor, and that the failure of the pledgee or purchaser of the certificate to obtain a registry on the corporate books is not fatal to his interest in the stock. In the great commercial centers, where certificates of stock pass from hand to hand, and are pledged to banks and financial institutions daily to secure great sums of money, the necessity of such rule is imperative."

The judgment must be sustained, and it is so ordered. Costs of this appeal are awarded to the respondents.

Quarles, C. J., and Stockslager, J., concur.