BROWN v. WRIGHT, et al.

No. 2857.   Decided November 23, 1916 (161 Pac. 448).

1. Corporations—Transfer of Stock Certificate—Title of
   Holder.   Where shares of a corporation are offered for sale by
   the person named in the certificate, an intending purchaser
   is not required to look beyond the recitals of the certificate in
   regard to his title or the equities of the corporation, or to sus-
   pect fraud in the issuing of the shares where all seems fair and
   honest.   (Page 637.)

2. Corporations—Transfer of Stock Certificate—Statute.   In
   view of Comp. Laws 1907, section 330, providing that stock shall
   be deemed personal property, and the delivery of a stock cer-
   tificate of a corporation, together with a written transfer of
   the same, signed by the owner, to a bona fide purchaser or
   pledgee for value, shall be deemed a sufficient transfer of the
   title as against any creditor of the transferor and all other per-
   sons whomsoever, a recital on a certificate of stock that it was
   "transferable only on the books of the company by indorsement
   hereon and surrender of this certificate," did not preclude
   or restrict the right to otherwise sell, transfer, or pledge the
   certificate by indorsement and delivery.   (Page 637.)

3. Corporations—"Owner"—Transfer of Stock Certificate—Es-
   toppel to Deny.   In Comp. Laws 1907, section 330, the word
   "owner," meaning not only the actual and legal owner, but also
   the apparent owner named on the face of the certificate and the
   holder thereof in the regular course of business, the defendant
   corporation is estopped to deny the ownership of a stock certifi-
   cate issued in the name of other defendant as against plaintiff
   who took it as collateral security without notice of defect in
   title.[1]   (Page 638.)

4. Corporations — Transfer of Stock — Certificate — Statute —
   "Written Transfer."   Comp. Laws 1907, section 330, providing
   for a "written transfer" of stock, is satisfied by indorsement
   and delivery of the certificate of stock alone, and at least by a
   recital in a note of an assignment and transfer of the certifi-
   cate as collateral security.   (Page 639.)

5. Corporations—Transfer of Stock—Certificate—Notice.   Al-
   though that the assignor of a certificate of stock as collateral

[1] Mundt v. Bank, 35 Utah 90, 99 Pac. 454.

security objected to having the transfer to his assignee made on the books of the corporation as provided in the certificate may have been a suspicious circumstance, it alone was not sufficient cause of inquiry to overthrow other evidence, supporting a finding of bona fides on part of assignee. (Page 639.)

Appeal from District Court, Third District, Hon. *F. C. Loofbourow,* Judge.

Action by W. I. Brown against Thomas Wright, Jr., and others.

Judgment for plaintiff and defendant Nephi Irrigation Company appeals.

AFFIRMED.

*Thurman, Wedgwood & Irvine* for appellant.

*W. H. Bramel* for respondent.

STRAUP, C. J.

For $1,500 loaned by the plaintiff to the defendants Thomas Wright, Jr., and Clara M. Wright, they, in April, 1912, executed and delivered to him their promissory note. To secure its payment Thomas Wright, Jr., at the same time, indorsed, transferred, and delivered to the plaintiff this certificate of stock:

"No. 428.                                        40¼ Shares.
        "The Nephi Irrigation Company,
        "Incorporated under the Laws of Utah
                    Territory.
                        "Nephi, Utah, May 3d, 1889.
    "This certifies that Thomas Wright, Jr., is entitled to forty and one-quarter shares in the capital stock of the Nephi Irrigation Company, transferable only on the books of the company by indorsement hereon and surrender of this certificate.
                    "Wm. H. Warner, President.
                    "Thomas Ord, Secretary."

The note also recites that the certificate, fully described, is given as security for its payment, and contains the usual pro-

visions for sale on default of payment of the principal or interest. This action is brought to recover on the note and to foreclose on the certificate.

On allegations that the defendant the ·Nephi Irrigation Company asserts a groundless, but hostile, claim or interest in and to the certificate, it was made a party. It answered, alleging that it, in 1889, issued the certificate to Thomas Wright, Jr., which, in July of that year, was, on its books, surrendered and transferred; but that thereafter Thomas Wright, Jr., in some manner unknown to the company surreptitiously, wrongfully and fraudulently, and without its knowledge or consent, obtained possession of it. In another paragraph the company alleged that upon a sale of the certificate by Thomas Wright, Jr., to one Joseph Wright the certificate was surrendered to the company, and that after a transfer of it on its books it was lost or stolen, but that the company had no knowledge or information as to how it thereafter came into the possession of Thomas Wright, Jr. It was thus averred that Thomas Wright, Jr., at the time of the indorsement and transfer of the certificate to the plaintiff, was not the legal owner or lawful holder thereof, of which the plaintiff had notice and knowledge, and hence was not an innocent purchaser or pledgee. These allegations were denied by the plaintiff, as well as by the defendants Thomas and Clara Wright, who did not contest, but confessed, plaintiff's cause.

The case was tried to the court, who found the issues in favor of the plaintiff. Among other things, the court found that in May, 1889, the irrigation company issued and delivered to Thomas Wright, Jr., the certificate pledged by him, and that the company, in July of that year, without the presentation, or surrender, or indorsement of the certificate, and without the knowledge or consent of Thomas Wright, Jr., made an entry on its stub books that the certificate had been surrendered, but that, until indorsed and delivered to the plaintiff in 1912, Thomas Wright, Jr., at no time had indorsed, transferred, or surrendered the certificate to any one, and had and maintained the exclusive possession and control over it. The court also found that Thomas Wright, Jr., from the summer of 1889 until he pledged the certificate in 1912, had not

used any of the water represented by the certificate; that no notice was given him, nor any request made of him, to pay any charges or assessments, but that Joseph Wright paid all of the charges and assessments against the certificate issued to him in lieu of that of Thomas Wright's, and that Joseph Wright had and enjoyed the use of all of the water represented by it; that Thomas Wright, Jr., in the fall of 1889, learned that the company had issued a certificate to Joseph Wright for the identical stock represented by his certificate, and that Joseph Wright claimed to be the owner thereof, but that neither the company nor Thomas, nor Joseph Wright, took any steps to ascertain or determine the conflicting claims. The court, however, found that as to this the plaintiff had neither knowledge nor notice of any claim or right of any one, except that of Thomas Wright, Jr., in and to the certificate; that he relied on the certificate in the name and in the possession of Thomas Wright, Jr., and believed that it was what it on its face represented, and that Thomas Wright, Jr., was the lawful owner and holder thereof, and hence found that the plaintiff was an innocent purchaser or transferee for value in good faith, and without notice or knowledge of any defect or infirmity of title in Thomas Wright, Jr.

Upon the issue that Thomas Wright, Jr., fraudulently or surreptitiously, or wrongfully, obtained possession of the certificate, or that he had sold it to Joseph Wright, the court found against the company and in favor of the plaintiff. Indeed, there was little, if any, evidence, to support such allegations.

Upon these findings the court reached the conclusion that the plaintiff had a valid lien on the certificate so indorsed and transferred to him by Thomas Wright, Jr., directed a sale thereof, and the proceeds to be applied on the note, and the surplus, if any, to be yielded over, not to Thomas Wright, Jr., but to the irrigation company. This, on the theory that as between the plaintiff, an innocent purchaser or transferee for value, and the irrigation company the latter was estopped from denying title and ownership in Thomas Wright, Jr., but that as between the irrigation company and Thomas Wright, Jr., the latter, by reason of laches and the statute of

limitations, lost his right to assert against the irrigation company any claim or interest in or to the certificate. Judgment was entered accordingly, from which the irrigation company prosecutes this appeal.

It is claimed that the plaintiff was neither an innocent nor rightful holder or purchaser of the certificate, for the reason that had he examined the books of the company, as it is urged he ought to have done, it would have been disclosed that Thomas Wright, Jr., was not the owner nor lawful holder of the certificate when he indorsed and transferred it to the plaintiff. But the plaintiff was not required to examine the books of the company to ascertain the validity of the transfer. Where shares of a corporation are offered for sale by the person named in the cerificate, an intending purchaser is not required to look beyond the recitals of the certificate in regard to his title or the equities of the corporation, or to suspect fraud in the issuing of the shares where all seems fair and honest. 10 Cyc. 634.

Because on the face of the certificate it was stated that it was "transferable only on the books of the company by indorsemfent hereon and surrender of this certificate," it is claimed that title thereto could not rightfully be transferred in any other manner; and as the certificate was not so transferred, it is urged that the plaintiff acquired no right therein. That such recitals do not preclude or restrict the right to otherwise sell, transfer, or pledge the certificate by indorsement and delivery has often been held. *National Bank of the Pacific* v. *Western Pacific Ry. Co.*, 157 Cal. 573, 108 Pac. 676, 27 L. R. A. (N. S.) 987, 21 Ann. Cas. 1391; *Morris* v. *Hussong Dyeing Mach. Co.*, 81 N. J. Eq. 256, 86 Atl. 1026; *Nicollet National Bank* v. *City Bank*, 38 Minn. 85, 35 N. W. 577, 8 Am. St. Rep. 643; *O'Neil* v. *Wolcott Mining Co. et al.*, 174 Fed. 527, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200; *Gray* v. *Fankhauser*, 58 Or. 423, 115 Pac. 146; *Mapleton Bank* v. *Standrod*, 8 Idaho, 740, 71 Pac. 119, 67 L. R. A. 656. And then we have a statute (Comp. Laws 1907, section 330), which provides:

"Stock shall be deemed personal property, and the delivery of a stock certificate of a corporation, together with a writ-

ten transfer of the same, signed by the owner, to a *bona fide* purchaser or pledgee for value, shall be deemed a sufficient transfer of the title as against any creditor of the transferer and all other persons whosoever,'' etc.

This statute cannot be curtailed by a recital in the certificate. *National Bank of the Pacific* v. *Western Pacific Ry. Co., supra.*

Because the statute says ''signed by the owner'' it is claimed that no one other than the actual and lawful owner of the certificate could legally or rightfully confer any title to another, and, as Thomas Wright, Jr., when he indorsed and transferred the certificate to the plaintiff, was not the real owner of the certificate, the plaintiff acquired no right therein. So construing the statute, a *bona fide* purchaser for value can acquire title only from the real or actual owner or his duly authorized agent. Such a construction renders the principle of *caveat emptor* to its full extent applicable to all sales and deliveries of stock certificates, the same as it is applicable to chattels. The authorities hold that stock certificates are a peculiar kind of property, and while, strictly speaking, not negotiable as commercial paper, yet are treated and dealt with similarly to such paper. *National City Bank of Chicago* v. *Wagner*, 216 Fed. 473, 132 C. C. A. 533; *Union Trust Co.* v. *Oliver*, 214 N. Y. 517, 108 N. E. 809; *National Safe Deposit Co.* v. *Hibbs*, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241; *Russell* v. *American Bell Telephone Co.*, 180 Mass. 467, 62 N. E. 751; *Litchfield* v. *Henson Oil Co.* (Okl.) 157 Pac. 137. We do not think it was intended by the statute to destroy this doctrine. ''Owner,'' as used in the statute, means not only the actual and legal owner, but also the apparent owner named and designated as such on the face of the certificate and the holder thereof in due and regular course of business. Any other view renders stock certificates mere chattels, and subject to the fullest extent to the principle of *caveat emptor*. Under the facts as found the appellant is estopped from disputing the ownership of the certificate in Thomas Wright, Jr. *Mundt* v. *Bank*, 35 Utah, 90, 99 Pac. 454, 136 Am. St. Rep. 1023; *Telegraph Co.*

v. *Davenport*, 97 U. S. 369, 24 L. Ed. 1047, and other cases heretofore cited.

It is also urged that under the statute to make a valid assignment and transfer requires a written transfer signed by the owner, and that a mere indorsement and delivery of the certificate is not such a written transfer within **4** the meaning of the statute.   We think this untenable. *Bank of Culloden* v. *Bank of Forsyth*, 120 Ga. 575, 48 S. E. 226, 102 Am. St. Rep. 115; Cook, Corp., sections 375-380. Besides, the note signed by Thomas Wright, Jr., itself recites an assignment and transfer of the certificate for collateral security.

Lastly, it is also urged that the plaintiff was not a *bona fide* purchaser, and was put upon inquiry as to the validity of Thomas Wright's title and given notice of some infirmity or defect in his title because the plaintiff did not have a transfer made on the books of the company, for the reason, as testified to by him, that Thomas Wright, Jr., objected **5** to it, and stated to him that the certificate had not been out of his possession, and that he did not then care to have a transfer made of it.   That may have been a suspicious circumstance of more or less weight, but, when considered in connection with the whole of the transaction, is not in itself of such controlling force as to overthrow the finding of *bona fides*, or to justify a contrary finding.

Let the judgment be affirmed, with costs.   Such is the order.

FRICK and McCARTY, JJ., concur.